

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-13-2004

# Parilla v. IAP Worldwide Ser VI

Precedential or Non-Precedential: Precedential

Docket No. 03-2009

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Parilla v. IAP Worldwide Ser VI" (2004). *2004 Decisions.* Paper 663.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/663

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

NOS. 03-2009 and 03-2308

VIRGEN PARILLA

v.

IAP WORLDWIDE SERVICES
VI, INC.;
WORLDWIDE SERVICES, INC.;
GENE LUDLOW; ROY VARNER
Appellants in No. 03-2009

PARILLA
Appellant in No. 03-2308

v.

IAP WORLDWIDE SERVICES
VI, INC.;
IAP WORLDWIDE SERVICES, INC.;
GENE LUDLOW; ROY VARNER

On Appeal From the District Court
of the Virgin Islands
(D.C. Civil Action No. 02-cv-00112)
District Judge: Hon. Raymond L. Finch

Argued December 9, 2003

BEFORE: NYGAARD, BECKER and
STAPLETON, Circuit Judges

(Opinion Filed: May 13, 2004)

Francis J. D'Eramo (Argued)
Nichols, Newman, Logan & D'Eramo
1131 King Street, Suite 204
Christiansted
St. Croix, USVI 00820-4971
　Attorney for Appellants in 03-2009

Lee J. Rohn
K. Glenda Cameron (Argued)
Law Offices of Lee J. Rohn
1101 King Street, Suite 2
Christiansted
St. Croix, USVI 00820
　Attorneys for Appellant in 03-2308

OPINION OF THE COURT

STAPLETON, Circuit Judge:

IAP Worldwide Services VI, Inc. ("IAPVI"), IAP Worldwide Services, Inc. ("IAP"), Gene Ludlow, and Roy Varner (collectively, "Appellants") appeal from an order of the District Court of the Virgin Islands denying their motion to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et*

*seq.* Appellee Virgen Parilla, a former employee of IAPVI, brought suit against Appellants alleging, *inter alia*, discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Invoking the provisions of an arbitration agreement in Parilla's employment contract, Appellants filed a motion to compel arbitration of Parilla's claims. The District Court denied Appellants' motion, holding that the agreement to arbitrate was unenforceable. For the reasons that follow, we will reverse the District Court's order and will remand to the District Court for further proceedings consistent with this opinion.

## I. Facts and Procedural History

On June 6, 2000, IAPVI hired Parilla as an administrative assistant. Upon the commencement of her employment, Parilla entered into an Hourly Employment Agreement ("the Agreement") with IAPVI. The Agreement addressed such employment-related matters as compensation, overtime, insurance, vacation, sick pay, promotions and discipline. Additionally, ¶¶ 16, 17, 19, and 20 of the Agreement pertained to arbitration. Paragraph 16 provides, in relevant part:

> Any controversy or claim arising out of or relating in any way to this Agreement, to the breach of this Agreement, and/or to Employee's employment with Employer, or to the suspension or termination of

Employee's employment with Employer, including claims against Employer, its owners or subsidiary or parent or affiliated companies, and its or their officers, directors, employees, and agents (including any person or company that manages any portion of the Facility) (all of the foregoing shall be collectively referred to as "Employer" for purposes of sections 16-20) shall be resolved by arbitration and not in a court or before an administrative agency.

App. at 44. Paragraph 17 of the Agreement sets forth all matters that are subject to arbitration, including "[a]ll claims or matters arising out of or relating in any fashion to this Agreement, to the breach of this Agreement, or to Employee's dealings with Employer, Employee's employment or the suspension or termination of Employee's employment with Employer." App. at 44.[1]

---

[1] Paragraph 17 further sets forth that:

> Arbitrable matters include, but are not limited to, the following: claims for wrongful or retaliatory discharge or wrongful treatment under Virgin Islands or Federal law, including, but not limited to,

2

Paragraph 19 sets forth numerous procedures governing an arbitration proceeding. It requires that "[a]rbitration shall take place pursuant to the Federal Arbitration Act, and in accordance with the Rules governing arbitration set forth in the National Rules for the Resolution of Employment Disputes of the American Arbitration Association [("AAA Rules")], as they shall be amended from time to time." App. at 45. Paragraph 19 also contains a thirty-day notice provision in order for an employee to bring a claim:

the Civil Rights Acts of 1866, 1871, 1964, and 1992, Title VII, the Equal Employment Opportunity Act, the Equal Pay Act, the Fair Labor Standards Act, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family and Medical Leave Act, and Titles 10 and 24 of the Virgin Islands Code; claims for employment discrimination under Virgin Islands law or Federal law; defamation, infliction of emotional distress, and all other matters sounding in tort; claims relating to Employee benefits; and the issue of arbitrability of any claim or dispute.

App. at 44-45.

Employee must present Employee's claim in written form to the Company within thirty (30) calendar days of the event which forms the basis of the claim, unless a different time for presentation of the claim is provided for by the National Rules for the Resolution of Employment Disputes of the American Arbitration Association. For the purposes of this time limitation, the event forming the basis of a claim arising from discharge of Employee shall be the date of discharge. In no event may Employee bring a claim of any nature against Employer unless the claim is filed as set forth in this paragraph and within the time set forth in this paragraph. The written notice submitted by the Employee shall describe the event forming the basis of the claim, a description of the claim, the relief sought by Employee, and an address and telephone number where Employee can be reached. Notice must be given to the Project/Camp Manager by hand delivery or by certified mail, return receipt requested, and must be received by the

3

Project/Camp Manager on or before the expiration of the thirty (30) calendar days from date of the event forming the basis of the claim, unless a different time for presentation of the claim is provided for by the National Rules for the Resolution of Employment Disputes of the American Arbitration Association. If notice is given by hand delivery, Employee must retain a receipted copy of the notice. If notice is given by certified mail, Employee must retain a copy of the return receipt. In the event that timely notice is not provided to the Company as set forth herein, it is agreed that the Employee has waived Employee's right to assert the claim, and shall have no further remedy against Employer. It is further agreed that this time limitation is to be strictly enforced by the arbitrator.

App. at 45-45A. With respect to the selection of an arbitrator, ¶ 19 provides:

Within fifteen (15) calendar days of receipt of timely notice of a claim from Employee, the Company shall submit a request to the American Arbitration Association to furnish a list

of five (5) impartial arbitrators. The parties specifically agree that the list of arbitrators shall consist of individuals who do not reside in the U.S. Virgin Islands or Puerto Rico. The arbitrators shall be selected by the Company and by the aggrieved Employee by alternately striking a name from the list provided. In the event that either party refuses to cooperate in this process of selection, the other party may select any name from the list to serve as arbitrator.

App. at 45A. Paragraph 19 also allocates the costs of arbitration:

Unless Employee elects otherwise, the Company shall advance the arbitrator's fees and expenses and, if the Company is successful in the arbitration, the Employee agrees to reimburse the Company for the arbitrator's fees and expenses if so directed by the arbitrator. Provided, however, that the Company agrees to pay for the arbitrator's transportation and lodging costs incurred. Other than arbitrator's fees and expenses, each party shall bear its own costs and

4

expenses, including attorney's fees.

App. at 45A-45B. Finally, ¶ 20 governs the venue of the arbitration hearing and the arbitration decision:

> The arbitration hearing shall take place in St. Croix, U.S. Virgin Islands. The arbitrator, in rendering a decision, may uphold the actions of the Company or may grant relief to Employee. If the arbitrator finds that disciplinary action was merited, the arbitrator may not alter or amend the form of disciplinary action imposed by the Company. The arbitrator shall provide the parties with, at minimum, a written, concise explanation of the basis for the award.

App. at 45B.

In July 2002, Parilla's employment with IAPVI was terminated. She subsequently commenced a civil action against IAPVI, its parent corporation IAP, and two of its employees, Gene Ludlow and Roy Varner. The suit alleged violations of Title VII, Titles 10 and 24 of the Virgin Islands Code, wrongful discharge, breach of contract, misrepresentation, negligent and/or intentional infliction of emotional distress, and sought punitive damages. Invoking the arbitration provisions of the Agreement, Appellants filed a motion to compel arbitration pursuant to § 4 of the FAA, 9 U.S.C. § 4. Parilla opposed this motion.

The District Court denied the motion to compel arbitration. It held that the Agreement was identical in all material respects to an employment agreement that the District Court had examined in a previous case, *Plaskett v. Bechtel International, Inc.*, 243 F. Supp. 2d 334 (D.V.I. 2003). Adopting its reasoning in *Plaskett*, the District Court held that certain terms within the arbitration provisions of ¶¶ 16, 17, 19, and 20 of the Agreement were unconscionable. The District Court further held that the unconscionable terms permeated the arbitration provisions and that such terms therefore could not be severed from the remainder of the arbitration provisions. Accordingly, the District Court declined to enforce the whole of the arbitration provisions. Appellants filed a timely notice of appeal, and Parilla filed a timely notice of cross-appeal.

On appeal, Appellants argue that the District Court erred in each of the three instances in which it found arbitration provisions of the Agreement to be unconscionable: (1) the thirty-day notice requirement in order for an employee to bring a claim; (2) the agreement by the parties to bear their own costs, expenses, and attorney's fees as applied to a federal Title VII claim; and (3) Rules 17, 18, and 34 of the AAA Rules regarding confidentiality, which were incorporated into the Agreement. Alternatively, Appellants argue that the District Court

5

erred in refusing to sever the terms it found unconscionable from the remainder of the arbitration provisions. In response, Parilla argues that we should affirm the District Court's conclusion that the three terms are unconscionable and that the entire agreement to arbitrate is accordingly unenforceable. Parilla further urges that, as an alternative basis for upholding the District Court's judgment, we hold three additional terms of the arbitration agreement unconscionable: (4) the agreement that all covered claims are to be resolved through arbitration rather than before an administrative agency; (5) the agreement that no potential arbitrator may reside in the U.S. Virgin Islands or Puerto Rico; and (6) the agreement that if the employee loses the arbitration, the employee will reimburse IAPVI for the arbitrator's fees and expenses if so directed by the arbitrator. We exercise plenary review over the District Court's holding as to whether the parties entered into a valid and enforceable agreement to arbitrate their disputes. *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003) (citing *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 176 (3d Cir. 1999)).

## II. Jurisdiction

The District Court had jurisdiction over this case under 28 U.S.C. § 1331 and 48 U.S.C. § 1612(a), because the case arose under, *inter alia*, Title VII, 42 U.S.C. § 2000e, *et seq.* The District Court exercised supplemental jurisdiction over Parilla's Virgin Islands claims pursuant to 28 U.S.C. § 1367 and 48 U.S.C. § 1612(a).

We have jurisdiction over this appeal pursuant to 9 U.S.C. § 16(a)(1)(B), which permits a party to seek immediate appellate review of a district court's order denying a motion to compel arbitration.

Before proceeding to the merits of this appeal, we turn briefly to two additional matters that are characterized by the parties as going to our jurisdiction. Appellants have moved to dismiss the cross-appeal for lack of jurisdiction, correctly pointing out that there has been no final order in the District Court and that the sole basis for appellate jurisdiction, 9 U.S.C. § 16(a)(1)(B), authorizes only appellate review of an order declining to compel arbitration. In response, Parilla insists that her cross-appeal is within our pendent jurisdiction, citing *E.I. duPont deNemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, SAS*, 269 F.3d 183, 202-203 (3d Cir. 2001), and, alternatively, that all of the arguments made in support of her cross-claims can be entertained by the Court as alternative grounds for affirming the judgment of the District Court. We agree with Parilla's alternative argument and express no opinion regarding the existence of pendent appellant jurisdiction. Appellants' motion to dismiss the cross-appeal will be denied as moot.

Second, Parilla has filed a motion to dismiss the appeals of IAP, Gene Ludlow and Roy Varner on the ground that they lack standing to appeal. She insists that being neither parties to the agreement to arbitrate nor third party beneficiaries of that agreement they have no cognizable

6

interest in this controversy. She stresses that the District Court made no finding that these appellants were intended to be beneficiaries of the agreement. Her argument borders on the frivolous.

Paragraph 16 of the Agreement explicitly provides that claims arising out of Parilla's employment with IAPVI, "including claims against . . . its owners or subsidiary or *parent* or affiliated companies, and its or their officers, directors, *employees*, and agents . . . shall be resolved by arbitration and not in a court or before an administrative agency." App. at 44 (emphasis added). As in *In re Prudential Insurance Co. of America Sales Practice Litigation All Agent Actions*, 133 F.3d 225, 230 (3d Cir. 1998), the arbitration agreement reflects a clear and unequivocal intent on the part of the parties to submit to arbitration covered claims against entities who fall into the aforementioned categories. The only factfinding necessary to conclude that IAP, Ludlow, and Varner were intended beneficiaries of the Agreement, therefore, would have been to inquire whether these entities were in fact the parent company and employees of IAPVI. Such specific findings of fact by the District Court were unnecessary, however, as Parilla expressly conceded those facts in her complaint. *See Soo Line R.R. Co. v. St. Louis Southwestern Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997) (noting the "well-settled rule that a party is bound by what it states in its pleadings"); *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995) ("Judicial admissions are formal concessions in the pleadings, or stipulations by the party or its counsel, that are binding upon the party making them."); *see also Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3d Cir. 1972) (noting that unequivocal "judicial admissions are binding for the purpose of the case in which the admissions are made[,] including appeals"). Accordingly, we conclude that IAP, Gene Ludlow, and Roy Varner were intended beneficiaries of the Agreement and we will therefore deny Parilla's motion to dismiss them as parties to this appeal.

## III. Enforceability of the Arbitration Provisions

We recently addressed the enforceability of arbitration agreements in *Alexander*, 341 F.3d at 264. We there noted that the FAA establishes "a strong federal policy in favor of the resolution of disputes through arbitration." *Id.* at 263 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Under the FAA, "such agreements are 'enforceable to the same extent as other contracts.'" *Id.* (quoting *Seus v. John Nuveen & Co.*, 146 F.3d 175, 178 (3d Cir. 1998)); *see* 9 U.S.C. § 2.[2]

---

[2]9 U.S.C. § 2 provides:
A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such

7

Accordingly, under the FAA, "[a] party to a valid and enforceable arbitration agreement is entitled to . . . an order compelling such arbitration." *Alexander*, 341 F.3d at 263 (citing *Seus*, 146 F.3d at 179); *see* 9 U.S.C. § 4.[3] It is up to the

court, prior to granting such an order, to determine whether the parties entered a valid agreement to arbitrate. *Alexander*, 341 F.3d at 264 (citing 9 U.S.C. § 2). "We are to look to the relevant state law of contracts in making this determination." *Id.* (citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002); *Harris*, 183 F.3d at 179). Applying the relevant state contract law, a court may also hold that an agreement to arbitrate is "unenforceable based on a generally applicable contractual defense, such as unconscionability." *Id.* (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). We set forth below the relevant principles of unconscionability and will apply those principles to the arbitration terms at issue in this case. We will then determine whether it is appropriate to sever any unenforceable provisions from the parties' agreement to arbitrate.

## A. Unconscionability

In *Alexander*, a case also arising in the U.S. Virgin Islands, we applied Virgin Islands law, as expressed in the Restatement (Second) of Contracts, to determine whether the terms of an arbitration agreement were unenforceable on grounds of unconscionability. *See id.* at 264; *see also* 1 V.I. Code Ann. § 4.[4] The

---

[3] 9 U.S.C. § 4 provides, in relevant part:
A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such

contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

agreement.

[4] 1 V.I. Code Ann. § 4 provides:
The rules of the common law, as expressed in the restatements of the law

8

relevant provision of the Restatement states:

> If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result.

Restatement (Second) of Contracts § 208 (1981). Applying this provision in *Alexander*, we explained the contractual defense of unconscionability:

> Courts have generally recognized that the doctrine of unconscionability involves both "procedural" and "substantive" elements. Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language. This element is generally satisfied if the agreement constitutes a contract of adhesion. A contract of adhesion is one which is prepared by the party with excessive bargaining power who presents it to the other party for signature on a take-it-or-leave-it basis. A contract, however, is not unconscionable merely because the parties to it are unequal in bargaining position. An adhesion contract is not necessarily unenforceable. The party challenging the contract therefore must also establish substantive unconscionability. This element refers to terms that unreasonably favor one party to which the disfavored party does not truly assent. According to the commentary accompanying section 208:
>
> > [G]ross inequality of bargaining power, together with terms unreasonably

approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

9

favorable to the stronger party, may confirm indications that the transaction involved elements of deception or compulsion, or may show that the weaker party had no meaningful choice, no real alternative, or did not in fact assent or appear to assent to the unfair terms.

[Restatement § 208 cmt. d.] In the end, unconscionability requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions.

341 F.3d at 265-66 (citations omitted) (internal quotation marks omitted). Moreover, the burden of proving such unconscionability lies with the party challenging the contract provision. *See Harris*, 183 F.3d at 181 (interpreting Pennsylvania contract law); *see also* E. Allen Farnworth, *Farnsworth on Contracts* § 4.28 & n.14 (3d ed. 1999) ("The party asserting the defense of unconscionability must prove it.").

## B. Application of Unconscionability Principles

The District Court in this case did not expressly hold that the parties' agreement to arbitrate was procedurally unconscionable. Nonetheless, because the District Court explicitly adopted its reasoning in *Plaskett*, it follows *a fortiori* that it concluded that the Agreement between Parilla and IAPVI was also procedurally unconscionable. There is record support for the conclusion and, indeed, Appellants did not contest procedural unconscionability in the District Court.[5]

---

[5]During oral argument, Appellants asserted for the first time that the District Court had erred in failing to expressly hold that the Agreement was procedurally unconscionable. Appellants did not previously raise this argument, either with the District Court or in its briefing on appeal, and the issue was therefore waived. *See Reform Party of Allegheny County v. Allegheny County Dep't of Elections*, 174 F.3d 305, 316 n.11 (3d Cir. 1999) ("The [appellant's] failure to raise this argument in its appeal briefs, as well as before the District Court, would alone

10

We next address whether the challenged contract terms are substantively unconscionable.

### 1. The Thirty-Day Notice Provision

As noted above, ¶ 19 of the Agreement requires that "Employee must present Employee's claim in written form to the Company within thirty (30) calendar days of the event which forms the basis of the claim, unless a different time for presentation of the claim is provided for by the [AAA Rules]." App. at 45. If such timely notice is not given in the manner directed in the Agreement, ¶ 19 further provides that "it is agreed that the Employee has waived Employee's right to assert the claim, and shall have no further remedy against Employer." App. at 45A. The District Court, adopting its reasoning in *Plaskett*, held that this provision was substantively unconscionable. We agree.

In *Alexander*, we confronted a nearly identical thirty-day notice provision and held that such a provision "is clearly unreasonable and unduly favorable to [the employer]." 341 F.3d at 266. Citing with approval to *Plaskett*, we stated that "[i]n addition to providing an apparently insufficient time to bring a well-supported claim, such an obligation prevents an employee from invoking the continuing violation and tolling doctrines." *Id.* at 267.

be fatal for the argument. 'An issue is waived unless a party raises it in its opening brief . . . .'" (quoting *Laborers' Int'l Union v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994))).

We also noted that the unfair advantage this provision gives the employer "is only compounded by the fact that [the employer] is apparently not required to provide detailed and written notice to an employee of any of its own claims within a strictly enforced thirty-day time period." *Id.* Accordingly, we held that "the thirty-day time restriction [was] substantively unconscionable." *Id.*

Appellants attempt to distinguish *Alexander* on the ground that, unlike that case, the thirty-day notice provision here incorporates the AAA Rules. Appellants claim that the incorporation of the AAA Rules saves the provision from unconscionability because AAA Rule 4(b) provides an alternative time limit for presenting a claim. Rule 4(b)(i)(1) states that a party may initiate an arbitration by:

> Fil[ing] a written notice (hereinafter "Demand") of its intention to arbitrate at any regional office of the AAA, within the time limit established by the applicable statute of limitations if the dispute involves statutory rights. If no statutory rights are involved, the time limit established by the applicable arbitration agreement shall be followed.

App. at 167. Appellants therefore contend that the thirty-day notice provision is not a strict limitation, but rather provides an exception that allows an employee to initiate a statutory claim within the

11

applicable statute of limitations. The District Court rejected this argument, holding that Appellants had misread Rule 4(b). It concluded that Rule 4(b) governs only the manner of initiating an arbitration; even if an employee complied with that rule, an arbitrator would not be able to afford the employee any remedy unless the employee presented the claim to the employer within thirty days. We agree. AAA Rule 4(b) cannot be read as an exception to the thirty-day notice provision, and it does not absolve Parilla of the contractual obligation to present a claim to IAPVI within thirty days. Consistent with *Alexander*, we hold that this arbitration term is unconscionable.

### 2. Costs, Expenses, and Attorney's Fees

Paragraph 19 of the Agreement provides that "[o]ther than arbitrator's fees and expenses, each party shall bear its own costs and expenses, including attorney's fees." App. at 45B. The District Court, adopting its reasoning in *Plaskett*, held this provision to be substantively unconscionable, but only as applied to Title VII claims and not as to claims arising under Virgin Islands law. *See Plaskett*, 243 F. Supp. 2d at 340-41.[6] The

District Court's reasoning has been undermined by our subsequent holding in *Alexander*.

In *Alexander*, we recognized *Plaskett*'s rationale but nevertheless held that, even though both parties may have surrendered eligibility for costs, expenses, and attorney's fees under Virgin Islands law, "[s]uch a relinquishment . . . clearly helps [the employer], the party with a substantially stronger bargaining position and more resources, to the disadvantage of an employee needing to obtain legal assistance." 341 F.3d at 267. We therefore held this provision to be unconscionable as to any claim. Given this holding in *Alexander*, we have no

---

attorney's fee unless special circumstances would render such an award unjust,'" prevailing defendants may only be awarded attorney's fees in a court's discretion "'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith'" (quoting *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 416-17, 421 (1978))). With respect to claims arising under Virgin Islands law, however, the standards for recovering attorney's fees do not differ based upon whether the prevailing party is the plaintiff or defendant. *See* 5 V.I. Code Ann. § 541. Accordingly, the District Court held that the agreement that each party would bear its own attorney's fees did not benefit either party as to Virgin Islands law claims.

---

[6]The District Court reasoned that under Title VII, it is more difficult for prevailing defendants to recover attorney's fees than it is for prevailing plaintiffs. *See* 42 U.S.C. § 2000e-5(k); *E.E.O.C. v. L.B. Foster Co.*, 123 F.3d 746, 750 (3d Cir. 1997) (noting that, whereas "[p]revailing plaintiffs 'should ordinarily recover an

choice but to hold that the provision requiring each party to "bear its own costs and expenses, including attorney's fees" is substantively unconscionable with respect to both Parilla's Title VII claim and her claims under Virgin Islands law.

### 3. The Confidentiality Provisions

Paragraph 19 of the Agreement provides that "[a]rbitration shall take place pursuant to the Federal Arbitration Act, and in accordance with the . . . National Rules for the Resolution of Employment Disputes of the American Arbitration Association [("AAA Rules")]." The District Court, adopting its reasoning in *Plaskett*, held that AAA Rules 17,[7] 18,[8] and 34(b) and (c),[9] as incorporated by

reference into the Agreement, were unconscionable to the extent they provide for confidentiality. Those rules provide, in accordance with the traditional arbitration practice, that the arbitrator will "maintain the confidentiality of the arbitration," may control who is present during any portion of the proceedings, and "shall provide written reasons for the award unless the parties agree otherwise." The rules also provide that while all awards will be "publicly available," the names of the parties will not be publicly available "unless a party expressly agrees to have its name made public in the award." In support of its conclusion that these rules, while facially neutral, favor the employer and unduly burden the employee, the District Court gave the following explanation:

> [T]he ability of a party to unilaterally prevent the inclusion of its name in the

---

[7]AAA Rule 17 provides that:
> The arbitrator shall have the authority to exclude witnesses, other than a party, from the hearing during the testimony of any other witness. The arbitrator also shall have the authority to decide whether any person who is not a witness may attend the hearing.

[8]AAA Rule 18 provides that:
> The arbitra tor shall maintain the confidentiality of the arbitration and shall have the authority to make appropriate rulings to safeguard that confidentiality, unless the parties agree otherwise or the law provides to the contrary.

[9]AAA Rule 34(b) provides that:
> An award issued under these rules

---

> shall be publicly available, on a cost basis. The names of the parties and witnesses will not be publicly available, unless a party expressly agrees to have its name made public in the award.

AAA Rule 34(c) provides that:
> The award shall be in writing and shall be signed by a majority of the arbitrators and shall provide the written reasons for the award unless the parties agree otherwise. It shall be executed in the manner required by law.

13

award favors the repeat participant and makes it difficult for a potential plaintiff to build a case of intentional misconduct or to establish a pattern or practice of discrimination by a particular company.

*Plaskett*, 243 F. Supp. 2d at 343. Without further explanation, the District Court went on to hold that "[s]imilarly, AAA Rule 18 making the arbitration itself confidential and AAA Rule 17 allowing the arbitrator to hold closed hearings also favor [the employer] and unduly burden [the employee]." We conclude that the District Court erred in so holding.

The unconscionability doctrine seeks to prevent substantial unfairness between contracting parties having grossly unequal bargaining power. The District Court did not and could not, we believe, identify any such unfairness as between Parilla and the Appellants resulting from the confidentiality provisions which the District Court refused to enforce. Each side has the same rights and restraints under those provisions and there is nothing inherent in confidentiality itself that favors or burdens one party *vis-a-vis* the other in the dispute resolution process. Importantly, the confidentiality of the proceedings will not impede or burden in any way Parilla's ability to obtain any relief to which she may be entitled.[10]

---

[10]The absence of bias favoring either side is not surprising given the source of

the AAA rules. While the agreement before us, as we have noted, was not the product of arm's length negotiation between parties of equal bargaining power, the AAA rules incorporated therein are the result of a process in which management, labor and other diverse interests participated. As reported in the Introduction to the AAA National Rules for the Resolution of Employment Disputes:

> The Due Process Protocol for Mediation and Arbitration of Statutory Disputes Arising Out of the Employment Relationship was developed in 1995 by a special task force composed of individuals representing management, labor, employment, civil rights organizations, private administrative agencies, government, and the American Arbitration Association. The Due Process Protocol, which was endorsed by the Association in 1995, seeks to ensure fairness and equity in resolving workplace disputes. The Due Process Protocol encourages mediation and arbitration of statutory disputes, provided there are due process safeguards.
>
> * * *

14

The District Court's concern was not about any potential unfairness between two contracting parties *vis-a-vis* each other. Rather, that concern related to whether allowing an employer the right to prevent its name from appearing in an award in one proceeding would make it more difficult for claimants in subsequent proceedings to prove their cases. This concern has to do, not with unfairness between contracting parties, but with public policy and, more specifically, with whether confidentiality in arbitration proceedings of this kind is consistent with the public policy reflected in Title VII, the Virgin Islands' civil rights laws, 10 V.I. Code Ann. §§ 1-10, and the Virgin Islands Wrongful Discharge Act ("WDA"), 24 V.I. Code Ann. §§ 76-79.

Concerns similar to those noted by

---

On June 1, 1996, the Association issued National Rules for the Resolution of Employment Disputes. The rules reflected the guidelines outlined in the Due Process Protocol and were based upon the AAA's California Employment Dispute Resolution Rules, which were developed by a committee of employment management and plaintiff attorneys, retired judges and arbitrators, in addition to Association executives.
App. at 165.

the District Court were presented to the Supreme Court in *Gilmer v. Interstate Johnson Lane Corp.*, 500 U.S. 20 (1991), in support of an argument that the arbitration of an age discrimination claim under the arbitration rules of the New York Stock Exchange ("NYSE rules") was inconsistent with the policy underlying the ADEA. The petitioner there noted that arbitrators often did not issue written opinions and that this would result, *inter alia*, in "a lack of public knowledge of employers' discriminatory policies . . . ." *Gilmer*, 500 U.S. at 31. Under the NYSE rules, while written opinions stating the basis for an award were not mandated, written awards containing the names of the parties and a summary of the issues were required. Accordingly, the Supreme Court's rejection of the petitioner's argument is not controlling here. Nevertheless, its response persuades us that it would not find confidentiality in Title VII arbitrations unenforceable as against public policy.

In the course of upholding the agreement to arbitrate ADEA claims under the NYSE rules, the Court pointed to the ADEA's flexible approach to the resolutions of claims, noting that the United States Equal Employment Opportunity Commission ("EEOC") is directed to pursue "informal methods of conciliation, conference, and persuasion," *id.* at 27, all of which produce no publicly available records. In specific response to the concerns about some arbitrations remaining outside the public domain, the Court pointed out that such "concerns

15

apply equally to settlements of ADEA claims, which . . . are clearly allowed." *Id.* at 32.

This suggests to us that the Supreme Court would not view as a fatal defect the fact that, under Appellants' employment contract, some resolutions of Title VII claims will remain outside the public domain. This rationale, we conclude, applies equally to claims brought under the Virgin Islands' civil rights laws and the WDA. While it is true that the Virgin Islands has adopted a strong public policy prohibiting discrimination in all its forms, *see* 10 V.I. Code Ann. § 1,[11] nothing in these statutes

---

[11]10 V.I. Code Ann. § 1 provides, in relevant part:

> Now, therefore, it is declared to be the public policy of the United States Virgin Islands that all natural persons within its jurisdiction shall be entitled to the full and equal accommodations, advantages, facilities, and privileges of any place of public accommodations, resort, or amusement, and to the equal opportunity and treatment in employment in any and all businesses and industrial establishments, and to membership in all labor organizations, and to equal privileges in the purchase, lease, or rental of

prohibits parties from settling such claims privately. Moreover, we do not perceive the potential for confidentiality in

> real estate, and in the purchase of any commodity or service offered for sale; subject only to conditions or limitations imposed by law and applicable in like manner to all persons.
>
> In order to implement this public policy, it is the intent of this chapter to prevent and prohibit discrimination in any form based upon race, creed, color, or national origin, whether practiced directly or indirectly, or by subterfuge in any and all places of public accommodations, resort, or amusement, and in all sales of real estate, goods, articles, accommodations, commodities, or services, and in the employment of persons, or their working conditions, or obtaining union membership, and to prohibit clubs from establishing a private clientele of either members or guests, which they have selected, and with which persons alone will they transact their business and commerce.

16

arbitrations as posing a substantial threat to employees' future ability to prove a case under these statutes. As in *Gilmer*, the governing arbitration rules provide for discovery and "there has been no showing in this case that [those] discovery provisions . . . will prove insufficient to allow [plaintiffs] . . . a fair opportunity to present their claims." *Id.* at 31.[12]

We conclude that the confidentiality provisions incorporated in ¶ 19 of the Agreement are not unconscionable or violative of the public policy embodied in Title VII, the Virgin Islands' civil rights laws, or the WDA. They are, accordingly, enforceable.[13]

---

[12]For example, AAA Rule 7 provides:
The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration.

[13]Our holding is consistent with the only other Court of Appeals decision to address confidentiality in this context. In *Cole v. Burns International Security Services*, 105 F.3d 1465 (D.C. Cir. 1997), the Court of Appeals for the District of Columbia Circuit reviewed the reservations of numerous commentators about the arbitration of employment

### 4. Resolution of Claims Before an Administrative Agency

Paragraph 16 of the Agreement states, in part, that "[a]ny controversy or claim arising out of or relating in any way to this Agreement, to the breach of this Agreement, and/or to Employee's employment with Employer . . . shall be resolved by arbitration and not in a court *or before an administrative agency.*" App. at 44 (emphasis added). Parilla challenged the validity of this provision in the District Court, arguing that it was unconscionable because it forbade her from filing a charge of discrimination with the EEOC or the Virgin Islands Department of Labor. The District Court rejected this argument. Adopting the reasoning of *Plaskett*, the Court first held that an employee does not

---

disputes based on statutory rights, as contrasted with collective bargaining arbitration. One such concern was whether lack of public disclosure of arbitral decisions "may prevent potential plaintiffs from locating the information necessary to build a case of intentional misconduct or to establish a pattern or practice of discrimination by particular companies." *Id.* at 1477. The *Cole* Court noted, however, that such concerns were addressed by the Supreme Court in *Gilmer*, 500 U.S. at 30, and were rejected as "generalized attacks on arbitration." *Id.* at 1478. In *Cole*, the Court therefore enforced the arbitration agreement in question despite concerns about confidentiality in the context of arbitral decisions on statutory claims.

have a right to have his or her dispute resolved before the EEOC in the first place. 243 F. Supp. 2d at 343-44. Rather, once the employee files a discrimination claim against the employer before the EEOC, the EEOC begins an investigation, attempts to resolve any unlawful employment practice, and, if unsuccessful, files a civil action against the employer in its own name – not in the name of the employee. *Id.* (citing 42 U.S.C. § 2000e-5(b), (f)). Accordingly, the EEOC has no power to enter any judgment resolving a dispute between employee or employer. Second, the District Court held that while the Virgin Islands Department of Labor does have the power to enter a judgment resolving an employee's dispute, the waiver of that administrative forum was no more unconscionable than the waiver of a judicial forum. We agree with the District Court.

### 5. Arbitrator Residency Requirement

Parilla also challenges the validity of another clause in ¶ 19, which provides that "[t]he parties specifically agree that the list of [potential] arbitrators shall consist of individuals who do not reside in the U.S. Virgin Islands or Puerto Rico." App. at 45A. In presenting alternative grounds for affirmance, Parilla contends that this clause is unconscionable and against public policy. She argues that the clause discriminates illegally on the basis of national origin and race. She also claims that the clause is a "blatant attempt to rig the arbitration pool in such a way that arbitrators, unfamiliar with the Virgin Islands law or customs, and likely partial

to large corporate defendants like IAPVI, will be selected to arbitrate IAPVI employment disputes." Appellee's Br. at 24.

In *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985), an automobile distributor in Puerto Rico had entered into a distribution and sales agreement with a Japanese corporation that contained a clause providing for arbitration by the Japanese Commercial Arbitration Association of certain disputes arising out of the agreement. *Id.* at 617. After an antitrust dispute arose, the Japanese corporation, pursuant to the agreement, filed suit in the United States District Court for the District of Puerto Rico and attempted to compel arbitration before the Japanese Commercial Arbitration Association. One of the arguments raised by the automobile distributor opposing arbitration was that "decisions as to antitrust regulation of business are too important to be lodged in arbitrators chosen from the business community – particularly those from a foreign community that has had no experience with or exposure to our law and values." *Id.* at 632. The Supreme Court rejected this argument, "declin[ing] to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious, and impartial arbitrators." *Id.* at 634. The Court also reasoned, regarding the experience of potential arbitrators with American antitrust law, that "the obstacles confronted by the arbitration panel in this

18

case . . . should be no greater than those confronted by any judicial or arbitral tribunal required to determine foreign law." *Id.* at 634 n.18.

Under the Agreemen t before us, each side plays an equal role in a process reasonably designed to select an impartial arbitrator, and there are clearly numerous potential arbitrators "who do not reside in the U.S. Virgin Islands or Puerto Rico" who would serve impartially and competently apply Virgin Islands law. Like the *Mitsubishi* Court, we "decline to indulge the presumption that the parties will be unable or unwilling to retain competent, conscientious, and impartial arbitrators." *Id.* at 634. While we agree with Parilla that she is entitled to an impartial arbitrator, *see* 9 U.S.C. § 10(a)(2), and that an arbitration agreement providing her with anything less would be unconscionable, the provision she here challenges simply does not have that effect.

### 6. "Loser Pays Arbitral Costs" Provision

Finally, ¶ 19 of the Agreement requires that "the Company shall advance the arbitrator's fees and expenses and, if the Company is successful in the arbitration, the Employee agrees to reimburse the Company for the arbitrator's fees and expenses if so directed by the arbitrator." App. at 45A.[14] Relying on

---

[14]Whether successful or unsuccessful, IAPVI committed itself to pay for the arbitrator's transportation and lodging

*Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000), and our decision in *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002), Parilla argued in the District Court that the high costs of arbitration effectively denied her a forum to vindicate her statutory rights. She also requested, citing *Blair*, that she be permitted limited discovery into the costs of arbitration in order to show that the arbitral forum would be prohibitively expensive. The District Court declined to address Parilla's arguments as it had already found multiple arbitration provisions in the Agreement unconscionable.

We agree with Appellants that the "loser pays" provision cannot be held unconscionable based on the present record. In *Green Tree*, 531 U.S. at 92, the Supreme Court held that:

> [Where] a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs. . . . How detailed the showing of prohibitive expense must be before the party seeking arbitration must come forward with contrary evidence is a matter we need not discuss; for in this case

costs. App. at 45A-45B.

19

neither during discovery nor when the case was presented on the merits was there any timely showing at all on the point.

In *Blair*, we applied the Supreme Court's decision in *Green Tree* in analyzing the enforceability of a "fee-splitting" provision. 283 F.3d at 607-08.[15] Like Parilla, the plaintiff in that case had challenged the provision on the ground that it made arbitration prohibitively expensive for her and thereby deprived her of the ability to vindicate her statutory rights. We held that the plaintiff had not established her inability to pay the costs of arbitration, but concluded that *Green Tree* entitled her to limited discovery on this issue. We therefore ordered a remand to allow her to meet her burden under *Green Tree*. *Id.* at 610. In *Alexander*, we relied on *Green Tree* and *Blair*, as well as *Spinetti v. Service Corp. International*, 324 F.3d 212, 217 (3d Cir. 2003), in holding that a "loser pays arbitral costs" provision in an arbitration agreement was unconscionable where the plaintiffs resisting arbitration submitted evidence that they could not meet the financial burden of the arbitral forum. 341 F.3d at 269-70.

Parilla has submitted no evidence of the potential costs of arbitration or of her inability to pay those costs. It is undisputed, however, that Parilla did not have the opportunity to present such evidence because the District Court declined to entertain her argument regarding the enforceability of the "loser pays" provision. Accordingly, we will remand this matter to the District Court for the development of a record on, and a determination of, the issue of whether the reasonably anticipatable fees and expenses of the arbitrator and Parilla's financial circumstances are such that the prospect of her having to pay them in the event she loses unduly burdens her right to seek relief.

We decline Appellants' invitation to distinguish between the fee splitting provisions before the Court in *Green Tree* and *Blair* and the provisions, like the one before us, requiring the losing party to bear the arbitrator's costs and expenses if directed by the arbitrator. In a situation like Parilla's, Appellants insist, the unenforceability of the provision should not be addressed unless and until there has been an award imposing arbitral costs on the employee. It is true, as Appellants stress, that the final impact of provisions like the one before us remains speculative until the objecting party has actually lost and been directed by the arbitrator to pay. However, for purposes of an unconscionability analysis, this is a distinction without a material difference.

Essentially, we have held that an arbitration provision that makes the arbitral forum prohibitively expensive for a weaker party is unconscionable. *See*

---

[15]Under the "fee-splitting" provision in *Blair*, the employee was required to pay one-half of the arbitrator's compensation. 283 F.3d at 605.

20

*Alexander*, 341 F.3d at 269-70. With respect to an employee who is unable to pay the costs of arbitration, we see little difference between a 100% probability that the employee will have to pay *half* the arbitrator's fees and expenses on the one hand, and an indeterminate (but less than 100%) probability that the employee would have to pay *all* of the arbitrator's fees and expenses on the other. In either case, the employee must consider whether arbitration will be so prohibitively expensive for her that she cannot take advantage of the arbitral forum. Simply the prospect that the employee may have to pay the entire amount of the arbitrator's fees and expenses may serve to chill her willingness to bring a claim. Moreover, we see no reason to suspect that providing the arbitrator with some discretion to direct whether such fees will ultimately be incurred would have a determinative effect on the employee's calculus in deciding whether to seek arbitration. We therefore conclude that, as long as Parilla carries her burden to show an inability to pay the anticipated arbitral costs, the "loser pays" provision is just as unreasonably favorable to Appellants as would be a "fee splitting" provision. Accordingly, Parilla must be allowed limited discovery on remand in order to provide her with the means to show her inability to pay the anticipated costs of arbitration.

C. Waiver of Unconscionable Provisions

We next address whether Appellants may "cure" the unconscionability of the challenged arbitration provisions by waiving their right to enforce them. In their motion to compel arbitration, Appellants stated that they would waive identified provisions that might be challenged as unenforceable.[16] The District Court, citing to *LeLouis v. Western Directory Co.*, 230 F. Supp. 2d 1214, 1224-25 (D. Or. 2001), ruled that such a waiver is of no effect because "the fairness of a contract must be viewed as of the time the contract was formed." It did not err in so ruling.

As we have indicated, § 208 of the Restatement (Second) of Contracts provides the rule of decision here. That section provides, in relevant part, that "[i]f a contract or term thereof is unconscionable *at the time the contract is made* a court may refuse to enforce the contract." Restatement § 208 (emphasis added). Accordingly, we must determine unconscionability as of the time the contract was formed, and an after-the-fact offer to waive certain contract provisions can have no effect on our analysis.[17]

---

[16]Specifically, Appellants waived the thirty-day notice provision, the arbitrator's residency requirement, and the "loser pays" provision.

[17]In *Spinetti*, we addressed a similar issue and quoted with approval the following "cogent" explanation of the Sixth Circuit Court of Appeals:

> In considering the ability of plaintiffs to pay arbitration costs under an arbitration agreement, reviewing courts should not consider after-

21

the-fact offers by employers to pay the plaintiff's share of the arbitration costs where the agreement itself provides that the plaintiff is liable, at least potentially, for arbitration fees and costs. The reason for this rule should be obvious. Our concern is that cost-splitting provisions will deter potential litigants from bringing their statutory claims in the arbitral forum. When the cost-splitting provision is in the arbitration agreement, potential litigants who read the arbitration agreement will discover that they will be liable, potentially, for fees if they bring their claim in the arbitral forum and thus may be deterred from doing so. Because the employer drafted the arbitration agreement, the employer is saddled with the consequences of the provision *as drafted*. If the provision, as drafted, would deter potential litigants, then it is unenforceable, regardless of whether, in a particular case, the employer agrees to pay a particular litigant's share of the fees and costs to avoid such a

## D. Severability

We have thus far concluded that the thirty-day notice provision and the provision that each party would bear their own costs, expenses, and attorney's fees are unenforceable; the "loser pays arbitral costs" provision is potentially unenforceable if found to be substantively unconscionable on remand. We must next consider whether it is appropriate to sever the unenforceable provisions from the remainder of the agreement to arbitrate. While we conclude that this is an issue most appropriately reserved for the District Court on remand, a review of our decisions relating to the severability of unconscionable provisions in arbitration agreements may be helpful.

In *Spinetti*, the District Court found unenforceable two provisions in an employment agreement relating to arbitration: (1) a provision that each party would pay its own costs and attorney's fees regardless of the outcome of the arbitration, and (2) a provision that each party would pay one half of the arbitral costs. *See* 324 F.3d at 214-15. The latter provision was found to be unenforceable only after the Court was persuaded by the evidence that, given Spinetti's financial circumstances, the anticipated arbitral costs would have made arbitration

holding. *Morrison* [*v. Circuit City Stores, Inc.*, 317 F.3d 646, 675 (6th Cir. 2003)].
*Spinetti*, 324 F.3d at 217-18 n.2.

22

"prohibitive." *Id.* at 217. The District Court nevertheless held these two provisions to be severable from the agreement of the parties to arbitrate and ordered arbitration to proceed with the employer to pay the arbitral costs and with Title VII to govern whether the employee, if successful, would recover her attorney's fees and costs.

On appeal, we affirmed. We began our analysis by looking to Pennsylvania law because state contract law was incorporated into the FAA, and we determined that the rule of decision with respect to severability was reflected in § 603 of the Restatement (First) of Contracts and § 184 of the Restatement (Second) of Contracts. 324 F.3d at 219. Section 603 provides:

> A bargain that is illegal only because of a promise or a provision for a condition, disregard of which will not defeat the *primary purpose* of the bargain, can be enforced with the omission of the illegal portion by a party to the bargain who is not guilty of serious moral turpitude unless this result is prohibited by statute. Recovery is more readily allowed where there has been part performance of the legal portion of the bargain.

Restatement (First) of Contracts § 603 (1932) (emphasis added by *Spinetti* Court).

Section 184 of the Restatement (Second) of Contracts similarly provides:

> (1) If less than all of an agreement is unenforceable under the rule stated in § 178 [governing unenforceability on the grounds of public policy], a court may nevertheless enforce the rest of the agreement in favor of a party who did not engage in serious misconduct if the performance as to which the agreement is unenforceable is not an *essential part* of the agreed exchange.
>
> (2) A court may treat only part of a term as unenforceable under the rule stated in Subsection (1) if the party who seeks to enforce the term obtained it in good faith and in accordance with reasonable standards of fair dealing.

Restatement (Second) of Contracts § 184 (emphasis added by *Spinetti* Court).

Applying these severability principles, we concluded in *Spinetti* as follows:

> In light of the pro-arbitration federal policy and Pennsylvania contract law, we believe that the . . . task before us is to decide whether the stricken portion

23

of the employment arbitration agreement constitutes "an essential part of the agreed exchange" of promises. Restatement (Second) of Contracts § 184(1) (1981). We conclude that it does not.

"The essence of the [disputed] contract . . . is an agreement to settle . . . employment disputes through binding arbitration." *Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 681 (8th Cir. 2001). Accordingly, we agree with the district court that "[t]he provisions regarding payment of arbitration costs and attorney's fees represent only a part 'of [the] agreement and can be severed without disturbing the primary intent of the parties to arbitrate their disputes.'" *Spinetti v. Serv. Corp. Int'l*, 240 F. Supp. 2d 350 (W.D. Pa. 2001) (opinion and order of court) [hereinafter D. Op.] (quoting *Gannon*, 262 F.3d at 681). You don't cut down the trunk of a tree because some of its branches are sickly.

\* \* \*

We have no difficulty in

concluding that the primary purpose of the arbitration bargain entered into by Spinetti and SCI was not to regulate costs or attorney's fees. Instead, it was designed to provide a mechanism to resolve employment-related disputes.

*Spinetti*, 324 F.3d at 214, 219.

We also made the following observations in response to an argument of the EEOC, appearing as *amicus curiae*, that we should decline to enforce the entire agreement to arbitrate because the presence of the unenforceable provisions in an employment contract had an intimidating effect on employees:

To accept the EEOC's position is to throw the baby out with the bath water. It would compel the impecunious employee to resort to the courts – the only alternative to arbitration in dispute adjudication. To go to court would then require the employee to hire a lawyer, to endure the costs and delays of discovery and to incur all the expenses of litigation. To accept the EEOC's submission would be to deny the employee the real benefits of arbitration – "benefit[s] that may be of

24

particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial contracts." *Adams*, 532 U.S. at 123, 121 S. Ct. 1302.

Second, the relief urged by the EEOC and the Appellant would fly in the face of the federal pro-arbitration policy, as heretofore set forth in detail.

*Id.* at 223.

In *Alexander*, four provisions of the agreement to arbitrate were found to be unconscionable: (1) a thirty-day notice provision; (2) an attorney's fees and costs splitting provision like the one in *Spinetti*; (3) a loser pays arbitral costs provision much like the one here (together with evidence of its prohibitive impact); and (4) a provision limiting Alexander's remedy to reinstatement and narrowly defined "net pecuniary damages." 341 F.3d at 271.

The *Alexander* Court applied Virgin Islands law, which it determined to be reflected in the same Restatement sections applied in *Spinetti*. While it took note of *Spinetti*'s holding that unconscionable terms can be severed from an arbitration agreement where that can be done "without disturbing the primary intent of the parties to arbitrate their disputes," *Spinetti*, 324 F.3d at 214, the *Alexander* Court found the situation before it to be materially different and conducted no

inquiry into the intent of the parties and the importance of the unconscionable provision in the context of that intent. *See* 341 F.3d at 271 n.13. Rather, it held that severance was impermissible because the "cumulative effect" of the unconscionable provisions "permeate[d] the agreement . . . and thoroughly taint[ed] [the] central purpose of requiring the arbitration of employment disputes." *Id.* at 271.

This concept of "permeation" and "tainting" of the "purpose of arbitration" came from *Plaskett*, 243 F. Supp. 2d at 345, and the authorities cited therein. The Court in *Plaskett* declined to sever multiple unconscionable provisions in an arbitration agreement, reasoning as follows:

> These terms unreasonably favor [the employer] which has far greater bargaining power than [the employee]. The inclusion of "multiple defects . . . strongly suggests a deliberate decision to use the employer's superior bargaining position to obtain an unfair advantage." *Lelouis*, 230 F. Supp. 2d at 1225.

> The arbitration provisions are permeated with these unconscionable terms, making severance inappropriate. . . . When the central purpose of an arbitration provision is tainted with illegality, then

25

the provision as a whole cannot be enforced. *Id.* Thus, the Court refuses to enforce the arbitration provisions. *See, e.g., Ferguson v. Countrywide Credit Industries, Inc.*, 298 F.3d 778, 788 (9th Cir. 2002) (finding that arbitration agreement so permeated with unconscionable clauses that the Court could not remove the unconscionable taint by severance); *Graham Oil Co.* [*v. ARCO Products Co., a Div. of Atlantic Richfield Co.*], 43 F.3d [1244, 1247 (9th Cir. 1994)] (concluding that three objectionable clauses were not severable from the arbitration agreement as a whole) . . . .

*Plaskett*, 243 F. Supp. 2d at 345.

In *Ferguson*, the Court of Appeals for the Ninth Circuit found that the "'multiple defects [in the arbitration agreement] indicate a systematic effort to impose arbitration on an employee, not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage.'" 298 F.3d at 787-88 (quoting *Amendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 696-97 (Cal. 2000)). In *Graham Oil*, the same court refused to sever, finding that "a blatant misuse of the arbitration procedure serves to taint the entire clause . . . . [S]everance is inappropriate when the

entire clause represents an 'integrated scheme to contravene public policy.'" 43 F.3d at 1249 (quoting *Farnsworth on Contracts* § 5.8, at 70 (1990)).

The policy behind the doctrine of unconscionability is to deny judicial enforcement of situations involving "gross inequality of bargaining power, together with terms unreasonably favorable to the stronger party." Restatement (Second) of Contracts § 208 cmt. d. The "policy is not penal," however, and "[w]here a term rather than the entire contract is unconscionable, the appropriate remedy is ordinarily to deny effect to the unconscionable term." *Id.*, § 208 cmt. g. Thus, where disregard of the offending conditions leaves a fair agreement that will accomplish the primary objective of the parties, enforcement of that agreement will normally be appropriate.

*Spinetti*, in addition to endorsing this general rule of severability, teaches that it is inapplicable when declining to enforce only the unconscionable terms will defeat the primary purpose of the agreement. Whether such be the case "turns on the parties' *intent* at the time the agreement was executed, as determined from the language of the contract and the surrounding circumstances." *National Iranian Oil Co. v. Ashland*, 817 F.2d 326, 333 (5th Cir. 1987) (emphasis added). The party urging the enforcement of the arbitration agreement "must show that the essence, the essential term, of the bargain was to arbitrate, while the [unconscionable provisions were] merely a minor consideration." *Id.* at 333-34 (citing

26

Restatement (Second) of Contracts § 184 cmt. a; § 185(1) & cmt. b). Relevant to the intent issue is the presence or absence (here, the presence) of a contract provision calling for the severance of invalid provisions. Moreover, in determining whether the party urging enforcement of arbitration has met this burden, a court, under *Spinetti*, must keep in mind the Congressional judgment regarding the benefits of arbitration as well as the practical consequences of denying enforcement.

We read *Alexander*, *Plaskett*, *Ferguson* and *Graham Oil* to be applications of the equitable override provision of the Restatement. Such provision instructs that even where "disregard of [illegal provisions] will not defeat the primary purpose of the bargain," enforcement of the bargain will be denied if the person seeking it has been "guilty of serious moral turpitude," Restatement (First) of Contracts § 603, or "serious misconduct," Restatement (Second) of Contracts § 184(1). Under those four cases, a multitude of unconscionable provisions in an agreement to arbitrate will preclude severance and enforcement of arbitration if they evidence a deliberate attempt by an employer to impose an arbitration scheme designed to discourage an employee's resort to arbitration or to produce results biased in the employer's favor. *See Ferguson*, 298 F.3d at 787-88; *Graham Oil*, 43 F.3d at 1249.

The existence of multiple unconscionable provisions will not always evidence "serious moral turpitude" or serious misconduct, precluding enforcement of the agreement to arbitrate. That will depend on whether the number of such provisions and the degree of unfairness support the inference that the employer was not seeking a *bona fide* mechanism for dispute resolution, but rather sought to impose a scheme that it knew or should have known would provide it with an impermissible advantage.

This case is not controlled by either *Spinetti* or *Alexander*. There may be three unconscionable provisions here, as contrasted with two in *Spinetti* and four in *Alexander*. Moreover, as we have suggested, severability requires more than a count of the unconscionable provisions. The nature of the provisions is important both in the context of the principal/peripheral purpose issue presented in *Spinetti* and in the context of the serious misconduct issues presented in *Alexander*. It may, for example, be material in the latter context that, unlike the provision in *Alexander* limiting the remedy available to an employee, *see* 341 F.3d at 260, this case does not involve a provision unconscionably restricting the arbitrator's ability to completely resolve employment disputes. The facts in *Alexander* would thus appear to provide a far stronger basis for inferring serious misconduct on the part of the employer. As we stressed in *Alexander*, the provisions restricting relief to "reinstatement" and "net pecuniary damages" "substantially limit[ed] the relief available to plaintiffs." *Id.* at 267.

27

Because of that provision, an "employee [was] not entitled to complete compensation for any harm done and the company [was] able to evade full responsibility for its actions." *Id.*

On remand, the District Court, after providing the parties with an opportunity to develop the record, should determine whether the "loser pays arbitral costs" provision is unconscionable and whether the unconscionable provisions of the agreement to arbitrate may appropriately be severed.

## IV. Conclusion

The judgment of the District Court will be reversed, and this matter will be remanded for further proceedings consistent with this opinion.