

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-13-2004

# Lloyd v. Hovensa

Precedential or Non-Precedential: Precedential

Docket No. 03-1502

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Lloyd v. Hovensa" (2004). *2004 Decisions.* Paper 664.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/664

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

_____

NOS. 03-1502 and 03-1592

_____

BRUNO LLOYD
Appellant in No. 03-1502

v.

HOVENSA, LLC; WYATT, V.I., INC.

_____

BRUNO LLOYD

v.

HOVENSA, LLC.; WYATT, V.I., INC.
Wyatt, V.I., Inc.
Appellant in No. 03-1592

_____

On Appeal From the District Court
of the Virgin Islands
(D.C. Civil Action No. 02-cv-00121)
District Judge: Hon. Raymond L. Finch

_____

Argued December 10, 2003

BEFORE: NYGAARD, BECKER and
STAPLETON, Circuit Judges

(Opinion Filed: May 13, 2004)

Lee J. Rohn
K. Glenda Cameron (Argued)
Law Offices of Lee J. Rohn
1101 King Street - Suite 2
Christiansted
St. Croix, USVI  00820
  Attorneys for Bruno Lloyd
  Appellant/Cross-Appellee

Charles E. Engeman
David J. Comeaux (Argued)
Ogletree, Deakins, Nash, Smoak &
  Stewart
The Tunick Building - Suite 202
1336 Beltjen Road
St. Thomas, USVI  00802
  Attorneys for Wyatt, V.I., Inc.
  Appellee/Cross-Appellant

Linda J. Blair
Rachel L. Witty (Argued)
Bryant, Barnes & Moss
1134 King Street - 2nd Floor
Christiansted
St. Croix, USVI  00820
  Attorneys for HOVENSA, LLC
  Appellee

_____

OPINION OF THE COURT

_____

STAPLETON, Circuit Judge:

Bruno Lloyd appeals from an order of
the District Court of the Virgin Islands
compelling arbitration of his claims
against Wyatt, V.I., Inc. ("Wyatt" or

"Cross-Appellant") and HOVENSA, LLC ("HOVENSA"; collectively, "Appellees") pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* Wyatt cross-appeals from the District Court's order insofar as it denied Wyatt's motion for a stay of the proceedings on Lloyd's claims pending arbitration.

Lloyd, who applied for employment at Wyatt, brought suit against Appellees alleging, *inter alia*, discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Invoking the provisions of an arbitration agreement entered into as a condition of Lloyd's application, Appellees filed a motion to compel arbitration of Lloyd's claims and to stay the proceedings pending arbitration. The District Court granted Appellees' motion to compel arbitration, but dismissed the case with prejudice rather than granting a stay. For the reasons that follow, we will reverse the District Court's order and remand with instructions to enter an order consistent with this opinion.

## I.

Lloyd worked for more than twelve years as a boilermaker and pipefitter for various contractors at the HOVENSA refinery in St. Croix, Virgin Islands. Although the contractors for maintenance and repairs changed over these years, Lloyd remained employed at the HOVENSA refinery. In November 2001, Lloyd was working for Jacobs/IMC, one of the contractors at the refinery. At that time, HOVENSA awarded a contract to Wyatt, a newly created subsidiary of Wyatt Field Services Company ("Wyatt Field Services"), for services that Jacobs/IMC had been performing. Lloyd was then informed by Jacobs/IMC that he would be laid-off when Jacobs/IMC's contract expired on December 31, 2001.[1] After Wyatt was awarded the new contract, it filled positions in its upper management with persons on the continental United States who were already employed by its parent corporation, Wyatt Field Services. These persons, according to Lloyd, were predominantly white.

In January 2002, Wyatt began to hire between 300 and 400 people in the Virgin Islands. Also in January 2002, Wyatt began requiring all applicants to sign a Dispute Resolution Agreement ("DRA") as a condition of having their applications considered. App. at 196. The DRA states, in relevant part:

> I recognize that differences may arise between Wyatt and me in relation to my application for employment. Both Wyatt and I agree to resolve any and all claims, disputes or controversies arising out of or relating to my application or candidacy for employment, the terms

---

[1] According to Lloyd, it was the custom at the HOVENSA refinery that the former employees of the outgoing contractor would be offered employment or transferred to the incoming contractor, but Wyatt did not adhere to that custom.

and conditions of my employment, and any claims arising from or relating to the employment relationship exclusively by final and binding arbitration before a neutral arbitrator pursuant to the American Arbitration Association's National Rules for the Resolution of Employment Disputes [("AAA Rules")] . . . . This agreement extends to disputes with or claims against Wyatt V.I., Inc., HOVENSA, L.L.C., and any of their related or affiliated companies, entities, or individuals (as intended third party beneficiaries).

App. at 37.

On January 9, 2002, Lloyd applied for employment with Wyatt and signed the DRA. He was not hired. Lloyd thereafter filed this action against both Wyatt and HOVENSA. The complaint alleged: (1) violation of the Federal Civil Rights Act of 1967; (2) violation of Titles 10 and 24 of the Virgin Islands Code; (3) wrongful discharge by HOVENSA; (4) breach of an implied contract of good faith and fair dealing by HOVENSA; and (5) negligent and/or intentional infliction of emotional distress. Lloyd requested punitive as well as compensatory damages.

On September 27, 2002, Wyatt filed a motion to compel arbitration, pursuant to the DRA, and to stay the proceedings pending arbitration. Lloyd opposed this motion, arguing that the agreement to arbitrate was unenforceable because AAA

Rules 17, 18, and 34 with respect to confidentiality, AAA Rule 7 with respect to discovery procedure, and the DRA's fee-splitting provision were all unconscionable and against public policy. Lloyd also requested that the District Court allow him further discovery based on his belief that Wyatt's use of the DRA only in the Virgin Islands was motivated by bad faith or an otherwise improper motive. He claimed that, if Wyatt had indeed discriminated against Black or Hispanic Virgin Islanders through the use of the DRA, then the DRA would be violative of federal and Virgin Islands law and unenforceable as a matter of public policy.

On November 18, 2002, Wyatt filed a reply to Lloyd's memorandum opposing arbitration and HOVENSA filed a notice of joinder, thereby joining Wyatt's motion to compel arbitration. The District Court held a hearing on the motion on January 14, 2003, at which the testimony of several witnesses was taken.

After the evidentiary hearing, the District Court granted Wyatt's motion to compel arbitration and dismissed the complaint with prejudice. The District Court held that AAA Rules 17, 18, and 34, as incorporated into the DRA, were unconscionable. In addition, the District Court denied Lloyd's request for discovery on his theory that Wyatt used the DRA in a racially discriminatory manner. The District Court noted that Lloyd had never filed a motion for an order to conduct discovery, in accordance with Fed. R. Civ. P. 7(b) or Local R. Civ. P. 7.1, during the

nearly three months between his October 21, 2002 memorandum opposing arbitration and the evidentiary hearing. The District Court further held that the most Lloyd had shown was that Wyatt differentiated between applicants on the basis of residency and nothing more. Accordingly, the District Court found that the DRA had not been used as a tool of unlawful discrimination. Finally, the District Court severed the confidentiality provisions of AAA Rules 17, 18 and 34 from the DRA and granted Wyatt and HOVENSA's motion to compel arbitration. Rather than stay the proceedings pending arbitration, however, the District Court dismissed the action with prejudice because it found all of Lloyd's claims to be arbitrable and thus left no claims for adjudication by the District Court.[2] Lloyd filed a timely notice of appeal and Wyatt subsequently filed a notice of cross-appeal.

## II.

The District Court had jurisdiction over this case under 28 U.S.C. §§ 1331 and 48 U.S.C. § 1612(a), because the case arose under, *inter alia*, Title VII, 42 U.S.C. §§ 2000e, *et seq.* The District Court exercised supplemental jurisdiction over Lloyd's Virgin Islands claims pursuant to 28 U.S.C. § 1367 and 48 U.S.C. § 1612(a).

We have jurisdiction over this appeal and cross-appeal pursuant to 9 U.S.C. § 16(a)(3) because the District Court's order constituted a final decision with respect to an arbitration. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 88-89 (2000).[3] We recognize that a district court's order compelling arbitration is usually an interlocutory order that cannot be appealed. *See* 9 U.S.C. § 16(b)(2).[4] In this case, however, the District Court both compelled the parties to arbitrate their dispute and also dismissed the matter with prejudice. In *Green Tree*, the Supreme Court also considered an order compelling arbitration and dismissing the plaintiff's case with prejudice, and, applying the well-established meaning of the term "final decision," ruled that such order plainly dispose[s] of the entire case

---

[2]The District Court also held that (1) the DRA's fee-splitting provision, because it provided that Lloyd would not have to pay any fees upon demonstrating financial hardship to the arbitrator, was not unconscionable, (2) AAA Rule 7's discovery procedures were not unconscionable, and (3) that the DRA was not unconscionable solely because of the existence of unequal bargaining power. These rulings are not at issue in this appeal or cross-appeal.

[3]9 U.S.C. § 16(a)(3) provides that "an appeal may be taken from a final decision with respect to an arbitration that is subject to this title."

[4]9 U.S.C. § 16(b)(2) provides that "[e]xcept as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order . . . directing arbitration to proceed under section 4 of this title."

on the merits and le[aves] no part of it pending before the court. The FAA does permit parties to arbitration agreements to bring a separate proceeding in a district court to enter judgment on an arbitration award once it is made (or to vacate or modify it), but the existence of that remedy does not vitiate the finality of the District Court's resolution of the claims in the instant proceeding. 9 U.S.C. §§ 9, 10, 11. The District Court's order was therefore "a final decision with respect to an arbitration" within the meaning of § 16(a)(3), and an appeal may be taken.

531 U.S. at 86. Accordingly, we have before us a final appealable order that we may address on the merits.[5]

---

[5]We note that although the District Court's order in this case granted the dismissal *with* prejudice, the District Court's opinion stated that the matter would be dismissed *without* prejudice. *See* App. at 15, 16. This disparity, however, does not affect our appellate jurisdiction. *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 602 (3d Cir. 2002) (holding that the jurisdictional ruling in *Green Tree*, where the action had been dismissed with prejudice, applies equally to a case that was dismissed without prejudice).

Moreover, we note that, while Wyatt does not rely on it, appellate jurisdiction over the cross-appeal may be exercised pursuant to 9 U.S.C. § 16(a)(1)(A) ("An appeal may be taken

## III.

We first address the issue of whether the District Court erred in dismissing Lloyd's complaint with prejudice rather than staying the proceedings pending arbitration. On cross-appeal, Wyatt argues that pursuant to § 3 of the FAA, 9 U.S.C. § 3, the District Court was required to grant Appellees' motion to stay the litigation of Lloyd's claims pending the outcome of the arbitration and that the dismissal of Lloyd's case was therefore improper.[6]

Courts of Appeals have reached different resolutions of the issue of whether a District Court has discretion to deny a motion for a stay pending arbitration and dismiss a complaint where it finds all claims before it to be arbitrable. *Compare Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) ("Notwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."), *and Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) ("The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the

---

from an order refusing a stay of any action under section 3 of this title.").

[6]In construing the language of the FAA, our review is plenary. *See Shenango Inc. v. Apfel*, 307 F.3d 174, 192 n.19 (3d Cir. 2002) ("The standard of review in cases of statutory construction is plenary.").

5

district court must be submitted to arbitration."), *and Bercovitch v. Baldwin School, Inc.*, 133 F.3d 141, 156 & n.21 (1st Cir. 1998) (remanding a case to the District Court to decide whether to dismiss or stay, depending upon whether all issues before the court are arbitrable), *and Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992), *and Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988), *with Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953, 955 (10th Cir. 1994) (holding that where a defendant moved for a stay pending arbitration under 9 U.S.C. § 3, the District court erred in instead entering a dismissal and the proper course would have been to enter the stay). We have not heretofore had occasion to resolve the issue.[7] Today, we side with those courts that take the Congressional text at face value.

Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement*, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).

In accordance with the Supreme Court's instruction in *Green Tree*, we apply the "the plain language of the statutory text" in interpreting the FAA. *See* 531 U.S. at 88 (holding that the plain meaning of the term "final decision" in 9 U.S.C. § 16(a)(3) must be applied). Here, the plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration. The directive that the Court "shall" enter a stay simply cannot be read to say that the Court shall enter a stay in all cases except those in which all claims are arbitrable and the Court finds dismissal to be the preferable approach. On the contrary, the statute clearly states, without exception, that whenever suit is brought on an arbitrable

---

[7]We have twice commented on the issue in *dicta*, *see Seus v. John Nuveen & Co.*, 146 F.3d 175, 179 (3d Cir. 1998) and *Blair*, 283 F.3d at 601. In neither of those cases, however, did a party argue that a stay rather than a dismissal should have been entered and the Court accordingly had no occasion to decide whether Section 3 is mandatory. Our comments with respect to that issue are thus not precedential. *Marianna v. Fisher*, 338 F.3d 189, 201 (3d Cir. 2003).

claim, the Court "shall" upon application stay the litigation until arbitration has been concluded. In this case, Wyatt requested a stay of the proceeding as part of his motion to compel arbitration. Accordingly, we hold that the District Court was obligated under 9 U.S.C. § 3 to grant the stay once it decided to order arbitration.

We are free to disregard an unambiguous directive of Congress only in the rare instances where failing to do so produces a nonsensical result that could not have been intended. *Mitchell v. Horn*, 318 F.3d 523, 535 (3d Cir. 2003) ("We do not look past the plain meaning [of statutory language] unless it produces a result 'demonstrably at odds with the intentions of its drafters' . . . or an outcome 'so bizarre that Congress could not have intended it.'"). This is not one of those rare exceptions. Congress adopted the FAA to establish, promote and facilitate a national policy strongly favoring arbitration as a process for resolving disputes. *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003). Holding that Congress intended to deprive the District Court of discretion to deny a stay produces results that effectively promote and facilitate arbitration.

Contrary to Lloyd's suggestion, the District Court has a significant role to play under the FAA even in those instances in which the District Court orders the arbitration of all claims. Even in those instances, the parties are entitled to seek the Court's assistance during the course of arbitration. For example, the FAA allows arbitrating parties to return to court for resolution of disputes regarding the appointment of an arbitrator or the filling of an arbitrator vacancy, 9 U.S.C. § 5. Similarly, parties may ask the court to compel the attendance of witnesses, or to punish the witnesses for contempt, 9 U.S.C. § 7. Then, after an arbitration award is rendered, a party is entitled to seek relief in the District Court in the form of a judgment on the award or an order vacating or modifying the award. *See* 9 U.S.C. §§ 9, 10, 11. If the plaintiff's case has been dismissed rather than stayed, the parties will have to file a new action each time the Court's assistance is required, with the attendant risk of having their case assigned to a new judge. On the other hand, if the court enters a stay of the action and retains jurisdiction, then proceedings under §§ 5, 7, 9, 10, or 11 may be expedited, as the parties may simply return the to the same district judge presiding over the plaintiff's case.

There is an even more important reason, however, to hold that Congress meant exactly what it said. Whenever a party is subjected to litigation on any issue and is found to be entitled to arbitrate that issue, § 3 of the FAA, as we have noted, mandates that a stay be entered by the District Court. The effect of that stay is twofold: it relieves the party entitled to arbitrate of the burden of continuing to litigate the issue while the arbitration process is on-going, and it entitles that party to proceed immediately to arbitration without the delay that would be occasioned

by an appeal of the District Court's order to arbitrate. Under § 16 of the FAA, 9 U.S.C. § 16, whenever a stay is entered under § 3, the party resisting arbitration is expressly denied the right to an immediate appeal.[8] The legislative scheme of the FAA thus reflects a policy decision that, if a district court determines that arbitration of a claim is called for, the judicial system's interference with the arbitral process should end unless and until there is a final award.

If an exception to the mandate of § 3 were to be fashioned, thus giving the District Court discretion to dismiss the action rather than enter a stay, a party who has been held entitled to arbitration would be deprived of an important benefit which the FAA intended him to have – the right to proceed with arbitration without the substantial delay arising from an appeal. Stated conversely, the effect of recognizing an exception to the mandatory directive of § 3 is to give the District Court the power to confer a right to an immediate appeal that would not otherwise exist.

---

[8]Under 9 U.S.C. § 16(a)(1)(A) & (B), a party may seek immediate appeal of an order refusing a to grant a stay under § 3 of the FAA or an order denying a petition to compel arbitration under § 4. Under 9 U.S.C. § 16(b)(1) & (2), however, an appeal may not be taken (except as provided by 28 U.S.C. § 1292(b)) from an interlocutory order granting a stay under § 3 or compelling arbitration under § 4.

While it is true that the suggested exception would extend only to cases where the claim subject to arbitration is not asserted along with other non-arbitrable claims – that is, where all asserted claims are arbitrable – none of the courts that have been willing to endorse it has suggested a reason why Congress might have wanted a party entitled to arbitration to be subjected to an immediate appeal or not depending on how his adversary has chosen to draft his complaint.

In short, a literal reading of § 3 of the FAA not only leads to sensible results, it also is the only reading consistent with the statutory scheme and the strong national policy favoring arbitration. Accordingly, the District Court erred in refusing to enter a stay order.

Although we agree with Wyatt that the District Court's order dismissing Lloyd's case must be reversed, we reject the argument that reversal would, in turn, deprive us of jurisdiction to hear the merits of Lloyd's appeal. Relying in part on *Green Tree*, 531 U.S. at 87 n.2, Wyatt suggests that if we vacate the District Court's dismissal, we would be left with an unappealable interlocutory order. This argument misconstrues *Green Tree*. In that case, the Supreme Court noted that "[h]ad the District Court entered a stay instead of a dismissal . . . , that order would not be appealable." *Id.* (emphasis added). In this case, however, the District Court did not enter a stay. Wyatt's argument assumes that a conclusion that

the District Court *should have* entered a stay is tantamount to the conclusion that the District Court *did* enter a stay. This is simply not the case. As we have noted *supra*, the order before us is a final decision that is appealable under 9 U.S.C. § 16(a)(3).

While it is clear that a court in this procedural context has jurisdiction to address the merits of the appeal, it may choose to defer to the FAA's policy favoring expeditious arbitration proceedings and decline to do so when it believes addressing the merits will prolong the ultimate resolution of the dispute. *See, e.g.*, *Adair Bus Sales*, 25 F.3d at 955. Here, however, we are called upon to exercise our discretion after this appeal has been fully briefed and argued, and in a context where resolution of the merits is likely to advance, rather than prolong, the ultimate resolution of the dispute by arbitration. We will therefore proceed to consider the merits of Lloyd's appeal.

## IV.

Lloyd argues before us for the first time that HOVENSA failed to demonstrate that it was an intended third party beneficiary of the DRA. It follows, according to Lloyd, that HOVENSA failed to affirmatively show that it had "standing" to compel arbitration. In his reply brief, Lloyd adds that HOVENSA clearly lacks standing to compel arbitration of certain of his claims against it because those claims predate the DRA and, accordingly, fall outside the scope of that

agreement. Failure to raise these matters in the District Court should be excused, Lloyd insists, because "standing" to arbitrate is a jurisdictional matter that can be raised at any stage of the proceedings and because, in any event, finding a waiver would result in manifest injustice.[9] We are unpersuaded.

It is true that our case law, as well as the decisions of other courts, has often referred to a party's "standing" to compel arbitration. *See, e.g.*, *In re Prudential Ins. Co. of Am. Sales Practice Litig. All Agent Actions*, 133 F.3d 225, 229 (3d Cir. 1998); *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1413 (9th Cir. 1990). Lloyd is mistaken, however, in equating the doctrine of Article III constitutional standing with the "standing" required to compel arbitration in this case. In order for there to be Article III standing, there must be a "case or controversy." That is, the following three elements must be present:

---

[9]Lloyd also contends that he had no opportunity to raise these matters in the District Court, pointing to the fact that HOVENSA did not join in Wyatt's motion to compel arbitration until after Lloyd had filed his memorandum in opposition thereto. Nearly two months elapsed, however, between HOVENSA's initial reliance on the DRA and the oral argument on the motion to arbitrate. Lloyd, accordingly, had ample opportunity to dispute HOVENSA's status as an intended beneficiary of the DRA and to challenge the arbitrability of his claims against it.

First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations and internal quotations and footnote omitted). Here, the party invoking federal jurisdiction was Lloyd, and his complaint presented the District Court with a "case or controversy" that has not yet been resolved. Thus, the District Court properly exercised its jurisdiction. The issues that Lloyd seeks to raise before us relate only to whether HOVENSA has or does not have a contract-based defense requiring arbitration rather than litigation of those claims. That issue is not a jurisdictional one. *See Prudential Ins. Co. of Am.*, 133 F.3d at 229 (referring to the contractual standing of a party to arbitrate its claims); *Paul Revere Variable Annuity Ins. Co. v. Zang*, 248 F.3d 1, 5 n.2 (1st Cir. 2001).

Nor are we impressed with Lloyd's

manifest injustice argument. It well may be that some of his claims against HOVENSA are not within the scope of the arbitration clause, but the FAA's scheme for the expeditious and efficient disposition of disputes by arbitration would be frustrated if parties were not required to put their arbitrability claims on the table when the District Court is called upon to address such issues. We believe it is not manifestly unjust to require parties to do so when the only consequence of a waiver is an alternative form of dispute resolution and no loss of substantive rights. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985) ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. It trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.").

Our Circuit adheres to a "well established principle that it is inappropriate for an appellate court to consider a contention raised on appeal that was not initially presented to the district court." *In re City of Phila. Litig.*, 158 F.3d 723, 727 (3d Cir. 1998) (citing *Armbruster v. Unisys Corp.*, 32 F.3d 768, 772 n.4 (3d Cir. 1994); *Frank v. Colt Indus., Inc.*, 910 F.2d 90, 99-100 (3d Cir. 1990)). Accordingly, we decline to sustain Lloyd's

"standing to arbitrate" arguments.[10]

## V.

Finally, we address two arguments relating to the enforceability of the DRA. First, Lloyd challenges the District Court's holding that the DRA was not used in a discriminatory manner against public policy.[11]   Second, Wyatt's cross-appeal challenges the District Court's holding that AAA Rules 17, 18, and 34, which govern the confidentiality of certain aspects of the arbitration, are unconscionable and unenforceable.   We exercise plenary review over questions regarding the validity and enforceability of an agreement to arbitrate. *Alexander*, 341 F.3d at 263. However, "to the extent that the district court predicated its decision on findings of fact, our standard of review is whether those findings were clearly erroneous." *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 53-54 (3d Cir. 2001) (citing *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1509 (3d Cir. 1994)).

## A.

Lloyd's primary argument on appeal is that Wyatt used the DRA in a discriminatory manner as part of a "purposeful scheme to contravene unambiguous Virgin Islands public policy, as reflected by the V.I. Civil Rights Act, 10 V.I.C. § 3." Appellant's Br. at 12. Lloyd bases this claim on his assertion that Wyatt, by requiring Virgin Islands workers to sign the DRA as a condition of employment, uses "place of residence" as a "proxy" for race, color and national

---

[10]As we have noted, the DRA allows HOVENSA, as an intended beneficiary, to compel arbitration of claims arising out of Lloyd's employment and employment application.  While Lloyd urges that we should remand for fact finding on whether the parties intended HOVENSA to be a third party beneficiary, he has not made a proffer of evidence which would tend to show an intent contrary to that reflected on the face of the DRA.

[11]Lloyd also argues that, even if HOVENSA were an intended third-party beneficiary of the DRA, the provision granting it such status is unconscionable. He contends that the provision is unreasonably one-sided because while he is bound to arbitrate claims against HOVENSA, the provision does not require Wyatt to arbitrate claims against HOVENSA; nor does the DRA allow Lloyd to compel arbitration of any claims that HOVENSA may have against him. As an initial matter, we note that this argument appears to be a challenge to the fundamental principle of contract law that an intended beneficiary to a contract may enforce a promise made by the promisor,

but not vice versa. *See* Restatement (Second) of Contracts § 304 (1981). We need not address the issue, however, because it was never presented to the District Court and was therefore waived. *See In re City of Phila. Litig.*, 158 F.3d at 727.

11

origin. Alternatively, Lloyd alleges that the DRA has a disparate impact upon Blacks and Hispanics who predominate in the Virgin Islands workforce. As a result, he urges, the DRA is unenforceable under the generally applicable contract defense that use of the agreement contravenes public policy. Lloyd also claims that the District Court erred in not allowing him an opportunity to conduct discovery into this issue.

Lloyd's generally applicable contract defense relies on § 178(1) of the Restatement (Second) of Contracts, which provides:

> A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms.[12]

Lloyd also cites Title VII and the Virgin Islands Civil Rights Act, 10 V.I. Code Ann. § 1 *et seq.*, as illustrative of a strong federal and local public policy against employment discrimination.[13]

Significantly, Lloyd does not allege that any particular promise or term in the DRA was discriminatory. Rather, he claims that Wyatt used the DRA in a discriminatory manner. Even assuming, however, that § 178 of the Restatement may be applied to a facially neutral contract, Lloyd's argument must still fail as he has proffered no evidence that Wyatt's use of the DRA was in any way discriminatory.

Lloyd's argument is based solely on two facts: (1) that Wyatt began using the DRA after its upper management was hired; and (2) that Wyatt's parent company, Wyatt Field Services, does not use the DRA. Wyatt does not contest these facts. Instead, it admits that it began using the DRA in the Virgin Islands in January 2002. Wyatt responds, however, that this

---

[12]Wyatt argues on appeal that Lloyd waived his public policy argument by not relying on § 178 of the Restatement (Second) of Contracts in the District Court. While it is true that Lloyd never specifically relied upon the Restatement, he nonetheless expressly argued that the DRA was applied in a discriminatory manner and unenforceable as a matter of public policy. He therefore preserved the argument for appeal and we will address it on the merits.

[13]Lloyd further cites, for the first time on appeal, 24 V.I. Code Ann. § 74a(b), which provides that "[a]n employer subject to this chapter may not require an employee to arbitrate a dispute as a condition of employment." Section 74a was enacted on September 18, 2002, one month before Lloyd filed his memorandum in opposition to Wyatt's motion to compel arbitration. Lloyd did not, however, bring this statute to the attention of the District Court as a source of public policy and we therefore need not address it.

12

timing explains why its upper management employees, who were hired before January 2002, were not required to sign the DRA. The record indicates that all persons who applied for employment at Wyatt after January 2002 were obligated to sign the DRA. Wyatt proffered that the reason it began using the DRA was concern for the high cost of employee litigation claims in the Virgin Islands. It adds that its parent does not, and has not, engaged in any business in the Virgin Islands. Lloyd has not addressed Wyatt's explanations or claimed that they are pretextual.

The burden of proving a generally applicable contract defense lies with the party challenging the contract provision. *Cf. Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999) ("The party challenging a contract provision as unconscionable generally bears the burden of proving unconscionability."); E. Allen Farnworth, *Farnsworth on Contracts* § 4.28 & n.14 (3d ed. 1999) ("The party asserting the defense of unconscionability must prove it."). Here, Lloyd has failed to present any evidence in attempting to meet this burden. We will therefore affirm the District Court's holding that the DRA was not unenforceable as violative of public policy.

With respect to Lloyd's assignment of error regarding his request for discovery, we review a district court's denial of a discovery motion for an abuse of discretion. *See Seus*, 146 F.3d at 178 (citing *Marroquin-Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983) ("It is

well established that the scope and conduct of discovery are within the sound discretion of the trial court and that after final judgment of the district court or final agency order, our review is confined to determining if that discretion has been abused." (citations omitted))). Lloyd argues that the District Court erred in not considering his request to conduct discovery, but he does not cite any motion that the court denied or allege that he was deprived of the opportunity to conduct discovery on his own. The Federal Rules of Civil Procedure allow for numerous discovery mechanisms that do not require leave of the court. *See* Fed. R. Civ. P. 30(a)(1) (oral depositions), 31(a)(1) (written depositions), 33(a) (interrogatories), 34(b) (production of documents). Lloyd does not state whether he ever attempted to use any of these avenues of discovery to support his claim. We therefore reject his assignment of error.

B.

On cross-appeal, Wyatt argues that the District Court erred in holding that the confidentiality provisions of AAA Rules 17, 18, and 34, as incorporated in the DRA, were unconscionable and severable from the remainder of the DRA. We recently addressed an identical issue in *Parilla v. IAP Worldwide Services VI, Inc.*, ___ F.3d ___ (3d Cir. 2004) and concluded that the district court in that case had erred in holding these AAA Rules unconscionable. The factual circumstances in this case are substantially

13

the same as those in *Parilla* and the parties have also presented substantially the same arguments that were presented in that case. For the reasons given in *Parilla*, we hold that the District Court's ruling on this issue was in error. Accordingly, AAA Rules 17, 18, and 34 should not have been held unconscionable or severed from the DRA.

VI.

For the reasons set forth above, we will reverse the District Court's order and will remand with instructions to enter an order compelling arbitration pursuant to the Dispute Resolution Agreement, as written, and staying the proceedings in this case pending arbitration.

*LLOYD v. HOVENSA* – NOS. 03-1502 AND 03-1592

BECKER, *Circuit Judge*, concurring:
I join Parts I, II, and III of the majority's opinion in full. I concur in Parts IV and V with the understanding that this case, because it raises substantial and unresolved questions of considerable importance to those involved in employment litigation in the Virgin Islands, is the rare one in which we will exercise our discretion to address the merits of a decision that should have resulted in a stay pending arbitration, rather than dismissal.