

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-5-2005

# Digital Signal Inc v. Voicestream Wireless

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2696

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Digital Signal Inc v. Voicestream Wireless" (2005). *2005 Decisions.* Paper 168.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/168

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

_____

No: 04-2696

_____

DIGITAL SIGNAL, INC.,

v.

VOICESTREAM WIRELESS CORP.,
n/k/a T-Mobile USA, Inc.,
a Solely Owned Subsidiary of
Deutsche Telekom AC, a
German Corporation

T-Mobile USA, Inc., formerly
known as VoiceStream Wireless
Corporation,

                              Appellant

_____

On Appeal from the May 27, 2004 Order
of the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 04-cv-00118)
District Judge: Hon. A. Richard Caputo

_____

Argued  September 16, 2005

Before: ROTH, McKEE and FISHER,
Circuit Judges

(Filed: December 5, 2005)

ROBERT J. MURPHY (Argued)
Murphy Law Office
208 Chestnut Street
Dunmore, PA 18411

Attorney for Appellee

MICHAEL W. McTIGUE, Jr., (Argued)
Drinker, Biddle & Reath
18th & Cherry Streets
One Logan Square
Philadelphia, PA 19103

Attorney for Appellant

———————

OPINION

———————

McKEE, Circuit Judge.

T-Mobile USA, Inc. (T-Mobile) appeals the district court's denial of the Motion to Dismiss and Compel Arbitration that it filed in response to Digital Signal's suit alleging breach of contract and related claims. For the reasons below, we will reverse and remand for further proceedings consistent with this opinion.

I.[1]

In April of 2000, T-Mobile sent Digital Signal a proposed Dealer Agreement containing the terms and conditions pursuant to which Digital Signal was to be an authorized T-Mobile dealer. The agreement contained an arbitration clause which stated

_____

[1] Since we are writing primarily for the parties who are familiar with the factual and procedural background of this dispute, we will abbreviate our discussion of the facts.

2

in part that: "all claims, counterclaims, cross-claims, and disputes between Dealer and Company (including whether any particular dispute is arbitrable hereunder), shall be resolved by submission to binding arbitration." ¶ 12.11.1 [2] The agreement also contained an integration clause. That clause stated: "This Agreement represents the entire, complete final and exclusive Agreement between the parties hereto with respect to matters addressed in this Agreement and, except as expressly provided herein, shall not be affected by reference to any other documents." ¶ 12.3. Finally, the agreement stated: "Except as set forth herein, any amendments to this Agreement must be in writing and signed by Dealer and by the Vice President of Sales for Company. Any amendments signed by someone other than the Vice President of Sales for Company shall be null and void." ¶ 12.5.

Digital Signal's President signed the agreement and initialed each page. Digital Signal's Vice President also signed a copy of the agreement. A copy of the agreement was attached as an exhibit to the Complaint that Digital Signal filed in the district court. That exhibit contains the words "subject to addendum" handwritten above the President's signature, but that phrase is crossed out. There is no evidence as to who wrote "subject to addendum," when it was written, or who crossed the language out, and the district court made no finding regarding the authenticity of that language.

The record does contain a document that purports to be an addendum to the Dealer

---

[2] The arbitration requirement had certain exceptions as set forth in ¶ 12.11.5. However, the parties do not contend that these exceptions are relevant to this dispute.

Agreement. That "addendum" is not signed by a representative of T-Mobile or Digital Signal.

In May of 2000, Digital Signal and T-Mobile agreed that the Dealer Agreement that had been properly executed did not properly reflect that Digital Signal was to be compensated at the "tier 5" commitment level as the parties had intended. Accordingly, a T-Mobile representative sent a second Dealer Agreement to Digital Signal and directed that all copies of the initial Dealer Agreement be destroyed. However, after Digital Signal complained that the pages of the second agreement were not numbered, T-Mobile sent a third copy of the Dealer Agreement. The only differences between the third copy and the executed first copy were that the pages of the third copy were numbered, and the commitment level was properly stated as "tier 5," which was consistent with the parties' original understanding.

Each of the three copies, including the initial copy that had been duly executed by Digital Signal and T-Mobile, contained the arbitration and integration clauses set forth above. Although Digital Signal never signed the second or third agreements, it never objected to the substance of those agreements except for the initial error regarding the appropriate level of compensation.

More than two and one-half years later, Digital Signal filed the instant suit for breach of contract, and related claims, and T-Mobile moved to dismiss the suit and compel arbitration. The district court denied T-Mobile's motion based solely on Digital

4

Signal's complaint and the "subject to addendum" notation contained in the unsigned copy of the Dealer Agreement that Digital Signal attached to its complaint. The court reasoned that the parties did not have an agreement to arbitrate since the Dealer Agreement was "subject to addendum" and the purported addendum contained a notation to "strike arbitration." Thus, the district court concluded that Digital Signal never accepted T-Mobile's first proposed Dealer Agreement containing the arbitration clause. The court apparently believed that Digital Signal's President wrote "subject to addendum" on the agreement and attached an addendum before returning it to T-Mobile. In the court's view, that constituted a rejection of T-Mobile's offer and a counter offer. Accordingly, the court concluded that "there is simply no mutuality regarding the arbitration clause, and, therefore, there is no agreement to arbitrate as alleged in the Complaint. . . . The putative agreement to arbitrate therefore fails on the basis of fundamental contract law." App. at 4a. This appeal followed.

II.[3]

"Arbitration is a matter of contract between the parties, and a judicial mandate to arbitrate must be predicated upon an agreement to that effect." *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Inc.* 636 F. 2d 51, 54. (3d Cir. 1980). A court must compel arbitration if there is clear evidence that the parties entered into an agreement to arbitrate. 9 U.S.C. §§ 3, 4; *Gen. Elec. Co. v. Deutz*, 270 F.3d 154 (3d Cir. 2001). The inquiry into

_____

[3] Our review is plenary. *Lloyd v. Hovena*, 369 F.3d 263, 273 (3d Cir. 2004),

5

whether the parties agreed to submit their disputes to arbitration, and the scope of any

arbitration agreement is governed by "ordinary state law principles governing contract

formation." *Id*.[4]

"A naked assertion . . . by a party that it did not intend to be bound by the terms of

an arbitration agreement is insufficient" to raise an issue of fact about the existence of an

agreement to arbitrate. *Par-Knit Mills*, 636 F.2d at 55. However, an unequivocal denial

"accompanied by supporting affidavits, . . . in most cases should be sufficient to require a

jury determination on whether there had in fact been [an agreement to submit to

arbitration]." *Id*. In order for us to conclude as a matter of law that no agreement to

arbitrate existed between T-Mobile and Digital Signal, there must be no genuine issue of

material fact arising from the pleadings or attached exhibits. 9 U.S.C. § 4.[5] *See also Par-*

*Knit Mills*, 636 F.2d at 54.

---

[4] Both parties agree that Pennsylvania law governs this dispute, and the district court applied Pennsylvania law as specified in the Dealer Agreement. *See, Co. des Bauxites v. Argonaut-Midwest Ins.*, 880 F.2d 685, 688-89 (3d Cir. 1989).

[5] 9 U.S.C. § 4 provides, in relevant part:
A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ...for an order directing that such arbitration proceed in the manner provided for in such agreement... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement... **If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof**. . . . *Id*. (emphasis added).

6

Here, as we noted above, there is a signed Dealer Agreement containing an arbitration clause, and that agreement specifically states that it is "the entire, complete final and exclusive Agreement between the parties." Moreover, it is undisputed that the agreement requires that "any amendments [to it] must be in writing and signed by [Digital Signal] . . . ." That evidence of an arbitration agreement is countered only by Digital Signal's denials, and a copy of the Dealer Agreement that has the phrase "subject to addendum" crossed out. Digital Signal has not provided a copy of any executed addendum, nor has it explained anything about the mysterious addendum, or the equally mysterious reference to it on the exhibit to Digital Signal's complaint. It is difficult for us to understand why the district court did not end its inquiry there and grant T-Mobile's Motion to Dismiss and Compel Arbitration.

There is nothing on this record to support the conclusion that T-Mobile's communication to Digital Signal regarding the incorrect commitment level contained in the first Dealer Agreement had anything to do with the alleged addendum. T-Mobile made no reference to any addendum in its negotiations with Digital Signal, and discussions of the changes to the Dealer Agreement referred only to the "tier 5" commitment level, and page numbering.

Even assuming that there was an addendum to the agreement, there is nothing on this record to establish who added it, when it was added, or who crossed the phrase out. Thus there is no way of knowing whether T-Mobile even saw the alleged addendum, or

7

that it somehow trumps the properly executed arbitration and integration clauses. We therefore fail to see how the district court could have concluded that Digital Signal rejected the signed Dealer Agreement and made a counteroffer. That result places businesses in the tenuous position of having to rely on duly executed written contracts at their peril.

There is no dispute that the arbitration clause is sufficiently broad to include arbitration of Digital Signal's contract claims, and the district court erred in allowing Digital Signal's rather ephemeral reference to an "addendum" to defeat enforcement of the Dealer Agreement as written.

IV.

Accordingly, we will reverse the order denying T-Mobile's Motion to Dismiss and Compel Arbitration and remand the matter to the district court with directions that it grant that motion.

8