RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 21a0278p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
─────────────────

ARABIAN MOTORS GROUP W.L.L.,
          *Plaintiff-Appellant/Cross-Appellee*,

   *v.*

FORD MOTOR COMPANY,
          *Defendant-Appellee/Cross-Appellant*.

Nos. 20-2112/2152

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:16-cv-13655—Matthew F. Leitman, District Judge.

Decided and Filed:  December 3, 2021

Before:  SUTTON, Chief Judge; SILER and READLER, Circuit Judges.
─────────────────

### COUNSEL
─────────────────

**ON BRIEF:**  John B. Alfs, Cynthia M. Filipovich, CLARK HILL, Detroit, Michigan, for Appellant/Cross-Appellee.  Jessica L. Ellsworth, Jo-Ann Tamila Sagar, HOGAN LOVELLS US LLP, Washington, D.C., for Appellee/Cross-Appellant.

─────────────────

### OPINION
─────────────────

SUTTON, Chief Judge.  Arabian Motors Group and Ford Motor Company have been in and out of arbitration and federal court for nearly six years with respect to the same dispute. At issue at this stage of the case is whether the district court should have stayed or dismissed this federal court action to permit the remaining claims to be arbitrated under the Federal Arbitration Act.  On this record, the court should have stayed the action.  We reverse the district court's contrary decision.

I.

Beginning in 1986, Arabian Motors was the sole dealer authorized to sell and service Ford brands in Kuwait. In 2005, through a Resale Agreement, the companies set forth the new terms of their business relationship. In doing so, they agreed to use "binding arbitration" as the "exclusive recourse" for "any . . . dispute, claim or controversy" about the Agreement. R.5-1 at 22. Arabian and Ford agreed that the American Arbitration Association would handle any arbitration in Michigan and that it would conduct the hearing using the "Procedures for Cases under the UNCITRAL Arbitration Rules," a reference to the rules that the United Nations Commission on International Trade Law has created. *Id.* at 22–23.

Roughly a decade later, the relationship between the companies soured, prompting Ford to end the Resale Agreement in 2016. That same year, Ford went to the American Arbitration Association, seeking a declaration that it permissibly ended the Agreement and owed nothing to Arabian under it. Arabian Motors took measures of its own. It sued Ford in federal court, seeking an injunction and declaration prohibiting Ford from proceeding with the arbitration and raising common law claims for breach of contract and fraud. Arabian Motors moved for a preliminary injunction, arguing it could not be forced to arbitrate its claims because the Motor Vehicle Franchise Contract Arbitration Fairness Act, 15 U.S.C. § 1226, requires that an arbitration between dealers and car manufacturers proceed only if the parties consent to it after the dispute arises. The district court denied Arabian Motors' motion, deciding that the arbitrator must resolve this gateway issue.

The arbitral tribunal decided that the Fairness Act did not deprive it of authority to arbitrate the dispute and held that Ford permissibly terminated the Resale Agreement. On top of that, it taxed Arabian Motors $1.35 million for Ford's legal fees and the cost of the arbitral proceedings. During the proceedings, Arabian Motors brought counterclaims for breach of contract and fraud, but it withdrew them before the tribunal issued its award. In allowing Arabian Motors to withdraw these claims, the arbitrator noted that "it made no determination of the effect of the withdrawal on an attempt by [Arabian Motors] to re-assert the counterclaims in a future proceeding." R.32-2 at 13 (quotation omitted). Returning to federal court, Arabian Motors moved to vacate the cost-shifting award, and Ford opposed the motion and cross-moved

to confirm the award. The district court granted Ford's cross-motion and confirmed the award. A panel of our court upheld the decision. *Arabian Motors Grp., W.L.L. v. Ford Motor Co.*, 775 F. App'x 216, 219–20 (6th Cir. 2019). Among other holdings, the panel reasoned that the arbitration tribunal did not manifestly disregard the law in holding that the Fairness Act did not foreclose arbitration. *Id.* at 219.

On remand, Ford moved to stay the federal action to allow the arbitration panel to resolve Arabian Motors' common law claims. The district court determined that the remaining claims were subject to arbitration. At that point, the court opted to dismiss the federal case without prejudice rather than to stay it. Arabian Motors appealed on the grounds that the district court erred in determining that its common law claims were arbitrable. Ford cross-appealed on the grounds that the district court should have stayed rather than dismissed this federal action.

II.

Before entering the thicket of questions this case presents, we must make sure that the journey is a legitimate one. A decision in a moot case does not help anyone and is not ours to give anyway. *See Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 73 (1997). Federal courts lack the "authority to give opinions upon moot questions or abstract propositions," and we must dismiss the appeal where an intervening event "makes it impossible for the court to grant any effectual relief whatever to a prevailing party." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (quotation omitted).

How, one might ask, could a live controversy exist over a dispute that has been arbitrated and in which our court has already confirmed the arbitration award? It is a fair question, one of several oddities of this long-running dispute. The lingering complication arises from the reality that Arabian Motors withdrew some of its claims—the contract and fraud claims—from the arbitration. One possibility is that those claims were withdrawn with prejudice, confirming that this dispute is indeed over—and moot through and through. Another possibility is that the rules of the arbitration tribunal allow a party to remove claims from the dispute resolution without prejudice—and renew them later. Because the latter possibility remains a realistic possibility, a live question remains about whether Arabian Motors' common law claims will go to arbitration.

Recall that Arabian Motors brought breach of contract and fraud claims in its federal court complaint. In the last trip to our circuit, we held that the district court had not yet ruled on these claims but that we could review them when it did. *Arabian Motors Grp.*, 775 F. App'x at 217 n.1. That confirms that the arbitration award did not resolve whether these counterclaims must be arbitrated.

Pushing back, Ford leans on the fact that the confirmed arbitration award means that Arabian Motors can no longer succeed in the first cause of action in its complaint (seeking to enjoin arbitration) because the arbitration that Ford initiated has already occurred. That may be so. But Ford continues to argue that Arabian Motors' third, fourth, and fifth causes of action remain subject to arbitration, either because the first arbitration decision effectively decided them or because Arabian Motors still may raise them in front of the tribunal. All of this leaves us with a dispute that may be on life support but one that is not moot.

III.

We begin with Ford's cross-appeal, because it potentially pretermits the issues raised in Arabian Motors' appeal. The cross-appeal raises the question whether the district court should have stayed the federal court action pending arbitration of the remaining claims, as Ford asked, or dismissed it on the ground that all of the claims were arbitrable, as the court opted to do on its own initiative. The court should have granted Ford's request for a stay.

Section 3 of the Federal Arbitration Act shows that Ford had every right to ask for a stay, and on this record the court should have granted it. When a federal court faces an arbitrable issue, the Act says that the court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The Act's command that a district court "shall on application of one of the parties stay the trial of the action" conveys a mandatory obligation. The common meaning of "shall" when used in concert with another verb is "[a]m (is, are, etc.) obliged; must." *Shall*, *Webster's International Dictionary* 2300 (2d ed. 1942). Consistent with this

understanding, case law indicates that "[t]he word shall is ordinarily [t]he language of command." *Anderson v. Yungkau*, 329 U.S. 482, 485 (1947) (quotation omitted).

Other provisions of the Act reinforce this interpretation. The Act contains a number of provisions that enable a district court to facilitate an arbitration. One provision allows parties to enlist district courts to appoint arbitrators. 9 U.S.C. § 5. Another provision allows parties to enlist the court to summon witnesses to the arbitration. *Id.* § 7. Still other provisions say that, after the arbitration ends, the court may confirm, vacate, or modify an award. *Id.* §§ 9–11. When a district court stays a case and retains jurisdiction over it, that permits the parties to use these mechanisms promptly and efficiently. By contrast, a dismissal would require the parties to file a new action, possibly in front of a different judge. *See Lloyd v. Hovensa, LLC*, 369 F.3d 263, 270 (3d Cir. 2004).

Because a dismissal, unlike a stay, permits an objecting party to file an immediate appeal, a district court dismissal order undercuts the pro-arbitration appellate-review provisions of the Act. Section 16 of the Act allows immediate appeals of court orders that *deny arbitration* (such as the refusal of a stay under § 3) but defers appellate review of decisions *in favor of arbitration* (such as the grant of a stay or a refusal to enjoin arbitration). 9 U.S.C. § 16. If a district court could freely dismiss cases in this setting, it would upend this approach. It would allow a party normally required to bring an appeal at the end of the action to sidestep the clear policy preference of the Act—that pro-arbitration decisions are not appealable until the confirmation stage of the case—and continue to litigate the issues in federal court and thus disrupt the arbitration.

As this statutory landscape reveals, a district court should enter a stay in the normal course in this setting. But does that mean it always must do so? We need not decide. There may be situations in which a dismissal remains permissible—say a situation in which the dispute is moot or suffers from some other pleading or procedural defect. Or a situation in which both parties request a dismissal. Or a situation in which neither party asks for a stay. For now, it suffices to lay out the conventional rules, all of which show that the district court erred in denying Ford's request for a stay.

Arabian Motors insists that dismissal represents the more efficient disposition of this case because all claims before the district court are arbitrable. But that approach jumps over a pertinent consideration. Some gateway arbitrability decisions are for the arbitration panel to decide, not the district court. *See Anderson v. Charter Commc'ns*, *Inc.*, 860 F. App'x 374, 380 (6th Cir. 2021). The district court, to its credit, acknowledged that it could not be certain what the arbitral tribunal would do and noted that its best guess was that there is "no reasonable possibility" that the counterclaims will come back before it. R.64 at 30 n.9. But that guess about efficiency remains contingent and contestable in this setting and many others. More to the point, Congress told district courts to grant a stay when a party moves for one in this context and did so in a way that admits of few, if any, exceptions.

Arabian Motors claims that dicta in some of our decisions or the disposition of some unpublished opinions support the district court's approach. *See, e.g.*, *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000); *Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009). But these opinions merely upheld district court decisions dismissing arbitrable claims while focusing their attention on different legal issues, some without analyzing the language of § 3, others without analyzing what the statute normally requires, and still others without explaining the extent to which the parties asked for a stay.

It is true that some circuits have construed the Act to "afford[] a district court no discretion to dismiss a case where one of the parties applies for a stay." *Lloyd*, 369 F.3d at 269; *see also Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) ("It is axiomatic that the mandatory term 'shall' typically 'creates an obligation impervious to judicial discretion.'" (quoting *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998))). In one sense, we agree with these decisions, each of which respects the language of the Act. In another sense, we see no need to adopt an absolute rule. These decisions had no occasion to consider whether a stay is mandated in other scenarios, including the ones mentioned above, and we think it prudent to leave that question for later cases.

What of circuits that Arabian Motors claims go the other way? The company overstates the nature of these other rulings, most of which offer little analysis on the point. *See, e.g.*, *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 156 n.21 (1st Cir. 1998); *Sparling v. Hoffman*

*Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988). At least one opinion did not even involve a motion for a stay. *See Martin Marietta Aluminum, Inc. v. Gen. Elec. Co.*, 586 F.2d 143, 147 (9th Cir. 1978). One opinion, it is true, suggests an efficiency rationale that, where "all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (quotation omitted). But the Federal Arbitration Act is not a docket-management statute. It is a statute that lays out a textual preference for arbitration, not cleaning out district court dockets. *See Katz*, 794 F.3d at 346–47.

Pushing back on the statutory imperative that the district court "shall" stay the trial on application of one of the parties, the district court made a textual point of its own. It pointed to § 3's instruction that the court shall "stay the trial of the action" in these circumstances. 9 U.S.C. § 3. The court thought that the words "trial of the action" signify that the section applies only where the case includes non-arbitrable claims, because otherwise there would be no trial to stay while the arbitrator decided the claims delegated to him. But we do not read the statute that way. The reference to "trial of the action" more naturally signifies that the district court is to stay the trial that would otherwise occur if the party did not move for a stay or insist on arbitrating the claims. The court's interpretation also runs into a knowledge problem: The only way a district court could know that the trial of the action will not occur is to prejudge the arbitrability decision that is the arbitrator's decision to make.

The district court added that trial courts could authorize an interlocutory appeal under 28 U.S.C. § 1292(b), meaning that a stay would not necessarily protect the party seeking arbitration from having to go through an appeal. Two responses. One is that § 16(b)'s authorization of such an interlocutory appeal undercuts the argument that district courts should be able to dismiss cases like this one on efficiency grounds. The availability of this option shows that the parties and district court may certify a pressing, non-arbitrable, and efficiency-enhancing issue. The other answer is that the mechanics of § 1292(b) do not leave this option to the district court's discretion alone. It permits such an interlocutory appeal only where the underlying order "involves a controlling question of law" for which an immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Even then, the court of appeals

may choose to exercise its discretion not to permit the appeal. *Id.* In short, there is a world of difference between an appeal as of right and an appeal involving the exercise of channeled discretion of two different courts.

We reverse the district court's dismissal, grant the stay, and allow the parties to bring this dispute to a close in front of the arbitration tribunal.